2024-1164

---

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

MAGNUM MAGNETICS CORPORATION,
*Plaintiff-Appellant*

v.

UNITED STATES, FASTENERS FOR RETAIL, INC. D/B/A SIFFRON,
*Defendants-Appellees*

---

Appeal from the United States Court of International Trade in
Case No. 1:22-cv-00254, Judge Jennifer Choe-Groves

---

**OPENING BRIEF OF PLAINTIFF-APPELLANT
MAGNUM MAGNETICS CORPORATION**

Jeremy William Dutra, Esq.
Christopher Denison Clark, Esq.

SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
202-626-6237

*Counsel to Magnum Magnetics
Corporation*

Dated: January 19, 2024

**FORM 9. Certificate of Interest**

**Form 9 (p. 1)**
**March 2023**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

|  |  |
|---|---|
| **Case Number** | 2024-1164 |
| **Short Case Caption** | Magnum Magnetics Corp v. US |
| **Filing Party/Entity** | Magnum Magnetics Corporation |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/19/2024

Signature: /s/ Jeremy William Dutra

Name: Jeremy William Dutra

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Magnum Magnetics Corporation | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| Christopher D. Clark | | |
| | | |
| | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

I.    STATEMENT OF RELATED CASES.............................................1

II.    JURISDICTIONAL STATEMENT ............................................1

III.    STATEMENT OF THE ISSUES ...................................................1

IV.    STATEMENT OF THE CASE ......................................................2

    A.    The Scope of the Relevant Orders...............................2

    B.    Commerce's Scope Ruling...............................................3

V.    SUMMARY OF THE ARGUMENT .............................................5

VI.    ARGUMENT.................................................................................7

    A.    Standard of Review .......................................................7

    B.    Legal Framework for Scope Proceedings .......................7

    C.    The Unambiguous Scope Language of the Orders Covers Siffron's Magnetic Shelf Dividers. .....................................9

    D.    Commerce's Reliance on (k)(1) Sources Was Improper Given the Unambiguous and Dispositive Scope Language..........................10

        1.    Resorting to (k)(1) Sources Was Contrary to This Court's Precedent and Commerce's Regulations. ...................................10

        2.    Even if Permitted to Consider (k)(1) Sources, Commerce Misused Those (k)(1) Sources to Change the Scope of the Orders....................................................12

    E.    Commerce's Rationale for Determining Siffron's Magnetic Shelf Dividers to Be Outside the Scope of the Orders Does Not Withstand Scrutiny. ............................................................14

        1.    The Orders Do Not Exclude Flexible Magnets Bonded to "Functionally Inflexible" Materials. ...........................14

2.    Commerce 's "Substantial Difference" Test of a Bonded
Flexible Magnet Contradicts the Plain Language of the
Orders. ........................................................................................19

VII.    CONCLUSION. ................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*ArcelorMittal Stainless Belgium N.V. v. United States*,
    694 F.3d 82 (Fed. Cir. 2012) ...................................................7, 11, 16

*Duferco Steel, Inc. v. United States*,
    296 F.3d 1087 (Fed. Cir. 2002) ...............................................7, 12, 13

*Eckstrom Indus., Inc., v. United States*,
    254 F.3d 1068 (Fed. Cir. 2001) .............................................12, 16, 18

*Meridian Products, LLC v. United States*,
    851 F.3d 1375 (Fed. Cir. 2017) ............................................................8

*Mid Continent Nail Corp. v. United States*,
    725 F.3d 1295 (Fed. Cir. 2013) ...............................................7, 11, 12

*OMG, Inc. v. United States*,
    972 F.3d 1358 (Fed. Cir. 2020) .........................................................12

*Sunpreme Inc. v. United States*,
    946 F.3d 1300, 1308 (Fed. Cir. 2020) (en banc) ...........................7, 17

*Whirlpool Corp. v. United States*,
    890 F.3d 1302 (Fed. Cir. 2018) .........................................................11

**Statutes**

19 U.S.C. § 1516a(a)(2)(B)(vi) ....................................................................7

28 U.S.C. § 1295(a)(5) .................................................................................1

28 U.S.C. § 1581(c) .....................................................................................1

**Regulations**

19 C.F.R. § 351.225(k)(1) .........................................................................7, 8

*Regulations to Improve Administration & Enforcement of Antidumping & Countervailing Duty Laws*, 86 Fed. Reg. 52,300 (Dep't Commerce Sept. 20, 2021) .............................................................................8, 11

Plaintiff-Appellant Magnum Magnetics Corporation ("Magnum") respectfully submits this opening brief in support of its appeal from the final determination of the U.S. Court of International Trade ("CIT") in *Magnum Magnetics Corp. v. United States*, Ct. No. 22-00254, Slip Op. 23-140 (Ct. Int'l. Trade Sept. 26, 2023), Appx1-27.

## I.     STATEMENT OF RELATED CASES

Counsel for Magnum is unaware of any other appeal from the same civil actions that has previously been filed before this or any other appellate court. Counsel for Magnum is not currently aware of any other case that would be affected by the Court's decision in this appeal.

## II.     JURISDICTIONAL STATEMENT

This is an appeal from the final judgment of the CIT in *Magnum Magnetics Corp. v. United States*, entered on September 26, 2023. The CIT exercised jurisdiction under 28 U.S.C. § 1581(c).  On November 14, 2023, within sixty days of the CIT's final judgment, Magnum timely filed its notice of appeal pursuant to Federal Circuit Rule 4. This Court has jurisdiction to review the CIT's final judgment under 28 U.S.C. § 1295(a)(5).

## III.     STATEMENT OF THE ISSUES

This appeal raises the following issue:

1.    Whether the CIT erred in affirming the U.S. Department of Commerce's ("Commerce") determination that Appellee's magnetic shelf dividers are outside the scope of the antidumping and countervailing duty orders on *Raw Flexible Magnets from the People's Republic of China* (the "Orders"), where Commerce's determination was not in accordance with law, was unsupported by substantial evidence, and was otherwise unreasonable and unlawful.

## IV.    STATEMENT OF THE CASE

### A.    The Scope of the Relevant Orders

On September 17, 2008, Commerce issued the Orders. Appx33; Appx35. Commerce defined the scope of merchandise covered by the Orders as follows:

> The products covered by this order are certain flexible magnets regardless of shape, color, or packaging. Subject flexible magnets are bonded magnets composed (not necessarily exclusively) of (i) any one or combination of various flexible binders (such as polymers or co-polymers or rubber) and (ii) a magnetic element, which may consist of a ferrite permanent magnet material (commonly, strontium or barium ferrite, or a combination of the two), a metal alloy (such as NdFeB or Alnico), any combination of the foregoing with each other or any material, or any other material capable of being permanently magnetized.

> Subject flexible magnets may be in either magnetized or unmagnetized (including demagnetized) condition, and may or may not be fully or partially laminated or fully or partially bonded with paper, plastic, or other material, of any composition and/or color. Subject flexible magnets may be uncoated or may be coated with an adhesive or any other coating or combination of coatings.

> Specifically excluded from the scope of this order are printed flexible magnets, defined as flexible magnets (including individual magnets)

2

that are laminated or bonded with paper, plastic, or other material if
such paper, plastic, or other material bears printed text and/or images,
including but not limited to business cards, calendars, poetry, sports
event schedules, business promotions, decorative motifs, and the like.
This exclusion does not apply to such printed flexible magnets if the
printing concerned consists of only the following: a trade mark or
trade name; country of origin; border, stripes, or lines; any printing
that is removed in the course of cutting and/or printing magnets for
retail sale or other disposition from the flexible magnet;
manufacturing or use instructions (e.g., "print this side up," "this side
up," "laminate here"); printing on adhesive backing (that is, material
to be removed from the flexible magnet prior or subsequent to final
printing and before use; non-permanent printing (that is, printing in a
medium that facilitate easy removal, permitting the flexible magnet to
be re-printed); printing on the back (magnetic) side; or any
combination of the above.

All products meeting the physical description of subject merchandise
that are not specifically excluded are within the scope of this order.

Appx33; Appx36.

## B.    Commerce's Scope Ruling

On March 11, 2022, Siffron filed a scope inquiry with Commerce, seeking a

ruling on its magnetic shelf dividers. Appx43. Siffron described its product as

"plastic shelf dividers, generally T or L-shaped, that include a flexible magnetic

{sic} on their plastic base." Appx47. Siffron further stated that the flexible magnet

is attached to the base of the plastic divider using adhesive. *Id.* In response,

Magnum explained that Siffron's merchandise falls squarely within the

unambiguous text of the Orders, and thus is covered by the Orders under section

351.225(k)(1) of Commerce's scope inquiry procedural regulations. Appx154, 161-162.

In its scope ruling (Appx569-581), Commerce found that "based on the plain language of the scope," Siffron's magnetic shelf divider "appears to fall within the scope of the Orders." Appx578. Despite that finding, Commerce referenced two prior scope rulings and an excerpt from the U.S. International Trade Commission ("ITC") report from the investigation to find Siffron's magnetic shelf dividers excluded from the scope of the Orders. Appx578-580.

Commerce first stated that "bonding raw flexible magnets with an adhesive to a plastic blade renders the plastic shelf dividers inflexible to the extent that the plastic shelf divider cannot be manipulated without damaging the product." Appx579. Referring to the ITC's report, Commerce asserted, "the ITC determined that, in general, flexible magnets are permanent magnets that can be twisted, bent, slit, punched, coiled, or otherwise molded into any shape without losing its magnetic properties." *Id.* Commerce rationalized that "the ITC's description indicates that when as with the plastic shelf divider, an item incorporating an otherwise flexible magnet cannot be twisted, bent, or manipulated without that item breaking, the item can no longer be considered to be 'flexible.'" *Id.*

Commerce further stated that "the addition of another material, *i.e.*, a plastic blade, to a raw flexible magnet has created a product that is substantially different

4

from a flexible magnet covered by the scope of the Orders," and therefore lies outside the scope. Appx580.

Magnum appealed Commerce's scope ruling to the CIT, which sustained Commerce's scope ruling. Appx27. Magnum now appeals from the CIT's decision.

## V.    SUMMARY OF THE ARGUMENT

The Orders cover flexible magnets. From that, Commerce, relying on *InterDesign*, extends the flexibility requirement to any other product to which the flexible magnet may be bonded. Such a conclusion is unsupported by the actual text (not to mention that it is arbitrary as to when, according to Commerce, a component bonded to a flexible magnet is deemed sufficiently "flexible" to be in scope).

The Orders use the term "flexible" only to describe the word "magnets," and define the term "flexible magnets" as bonded magnets composed of a flexible binder and a material capable of being permanently magnetized. As such, "flexible magnets" is a term of art to differentiate in-scope magnets from other magnets which do not contain the type of flexible binders described in the second sentence of the Orders. The Orders go to great lengths to describe the types of flexible binders that chemically render a magnet flexible and subject to the scope of the Orders. It is the chemical makeup of the magnet that causes it to be subject merchandise, not the physical properties of the flexible magnet. If a subject

flexible magnet consists of (i) a flexible binder and (ii) a magnetic element, then it is covered by the scope of the Orders.

Further, the term "flexible" is not used to describe any of the constituent materials to which a flexible magnet may be bonded (*e.g.*, paper, plastic, or other material of any composition) and still be deemed to be in scope. The Orders do not require that the paper, plastic, or other material to which a flexible magnet may be bonded also be flexible. Had Commerce intended to exclude "functionally inflexible" products, it could have specifically delineated the exclusion in the Orders. It did not. Commerce concluded the Orders by stating that "All products meeting the physical description of subject merchandise that are *not specifically excluded* are within the scope of this order." Appx33. *All means all*. And Commerce is not at liberty to create new exclusions through scope rulings.

Here, the parties and the CIT agree that Siffron's products meet the physical description of subject merchandise. The products consist of a flexible magnet that is bonded to a piece of plastic. The products do not meet the specific exclusions listed in the Orders. Commerce cannot rely on prior scope rulings and a sentence from the ITC report to create and apply a "functionally inflexible" exclusion. Such a determination directly contradicts the plain language of the Orders thus rendering its scope ruling contrary to law.

## VI.    ARGUMENT

### A.    Standard of Review

This Court reviews CIT decisions *de novo*, replicating the CIT's review of

the challenged Commerce scope ruling. *Sunpreme Inc. v. United States*, 946 F.3d

1300, 1308 (Fed. Cir. 2020) (en banc). The Court will hold unlawful any

Commerce determination "unsupported by substantial evidence on the record, or

otherwise not in accordance with law." *Id.*

### B.    Legal Framework for Scope Proceedings

Congress granted Commerce the authority to issue scope rulings to clarify

"whether a particular type of merchandise is within the class or kind of

merchandise described in an existing" antidumping or countervailing duty order.

19 U.S.C. § 1516a(a)(2)(B)(vi).

The scope language is the "cornerstone" of Commerce's analysis and "a

predicate for the interpretative process." *Duferco Steel, Inc. v. United States*, 296

F.3d 1087, 1097 (Fed. Cir. 2002); *see also* 19 C.F.R. § 351.225(k)(1). If the

language of the scope is unambiguous, it governs; if the language of the scope is

ambiguous, then the other sources listed in 19 C.F.R. § 351.225(k) may be

consulted. *See Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1302

(Fed. Cir. 2013); *ArcelorMittal Stainless Belgium N.V. v. United States*, 694 F.3d

82, 87 (Fed. Cir. 2012). "{T}he question of whether the unambiguous terms of a

scope control the inquiry, or whether some ambiguity exists, is a question of law

that {the Court} reviews de novo." *Meridian Products, LLC v. United States*, 851

F.3d 1375, 1382 (Fed. Cir. 2017). Whether a product meets the unambiguous scope

language is a question of fact that the Court reviews for substantial evidence. *Id.*

Recognizing the primacy of scope language, Commerce's current

regulations require it to "consider the language of the scope," and permits it to

"make its determination on this basis alone if the language of the scope, including

the descriptions of merchandise expressly excluded from the scope, is dispositive.

19 C.F.R. § 351.225(k)(1). In amending its regulations in September 2021,

Commerce explained that consideration of primary interpretative sources under

(k)(1)[1] will occur "if Commerce determines that the language of the scope is not

itself dispositive (*i.e.*, it is not dispositive using no interpretive tools whatsoever").

*Regulations To Improve Administration and Enforcement of Antidumping and

Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,323 (Dep't Commerce Sept.

20, 2021). In other words, where the description of the merchandise at issue in the

scope ruling request meets the scope elements and is not covered by an exclusion,

Commerce's inquiry is at an end.

---

[1] The primary interpretive sources are descriptions of the subject merchandise in the petition, initial investigation, and prior determinations by Commerce (including scope determinations) or the ITC. 19 C.F.R. § 351.225(k)(1)(A)-(D).

**C.    The Unambiguous Scope Language of the Orders Covers Siffron's Magnetic Shelf Dividers.**

The Orders cover "certain flexible magnets regardless of shape, color, or packaging," and define "subject flexible magnets" as "bonded magnets composed (not necessarily exclusively) of (i) any one or combination of various flexible binders (such as polymers or co–polymers, or rubber) and (ii) a magnetic element, which may consist of a ferrite permanent magnet material (commonly, strontium or barium ferrite, or a combination of the two), a metal alloy (such as NdFeB or Alnico), any combination of the foregoing with each other or any other material, or any other material capable of being permanently magnetized." Appx33. The Orders further explain that "subject flexible magnets" remain in scope even if they are "fully or partially bonded with paper, plastic, or other material, of any composition and/or color." *Id.*

There is no dispute that a flexible magnet covered by the Orders is a component of the merchandise at issue. Appx578. Nor is there any dispute that the product consists of plastic bonded to the flexible magnet. *Id.* Commerce described Siffron's plastic shelf dividers as being "composed of an opaque and rigid plastic blade that is bonded with an adhesive to a raw flexible magnet at its base." *Id.* Given this undisputed composition, Commerce conceded, "based on the plain language of the scope, Siffron's product appears to fall within the scope of the Orders." *Id.*

The Orders contains a single exclusion relating to printed magnets. Appx33. That exclusion is inapplicable to Siffron's product because it is not printed. Neither Commerce nor Siffron contended the exclusion is applicable.

The unambiguous scope language covers Siffron's magnetic shelf dividers, which do not meet the sole exclusion for printed magnets. The magnetic shelf dividers are thus covered by the Orders and Commerce's scope ruling to the contrary was unlawful.

### D.     Commerce's Reliance on (k)(1) Sources Was Improper Given the Unambiguous and Dispositive Scope Language.

Ignoring the logical consequence of its finding that the shelf dividers consisting of plastic bonded to a covered flexible magnet "appears to fall within the scope of the Orders," Commerce asserts that its "previous scope rulings and language from the underlying ITC investigation provide further guidance in determining whether the plastic shelf dividers are excluded from the scope of the Orders. Appx578-79. This was improper procedurally and substantively, as discussed below.

### 1.     Resorting to (k)(1) Sources Was Contrary to This Court's Precedent and Commerce's Regulations.

In sustaining Commerce's approach, the CIT notes that "Commerce had the discretion to consider the (k)(1) sources when determining whether the scope language plainly spoke to the inclusion or exclusion of Siffron's product, without

first characterizing the existence of ambiguity as a condition precedent" and "has the discretion to consider the (k)(1) factors in its scope analysis under the revised regulations . . ." Appx12, 14-15. The CIT engaged in no analysis, merely reciting the scope regulations while failing to address the arguments Magnum raised on this issue. And its conclusion is wrong.

While Commerce *may* consider primary interpretive sources under (k)(1), such consideration is not at whim. In revising its regulations and responding to comments, Commerce explained that it will exercise its discretion to resort to the (k)(1) interpretive sources when it "determines that the language of the scope is not itself dispositive (*i.e.*, it is not dispositive using no interpretive tools whatsoever")." *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,323 (Dep't Commerce Sept. 20, 2021). This approach is consistent with this Court's admonition that only if the language is ambiguous must Commerce "consider the regulatory history, as contained in the so-called '(k)(1) materials.'" *Mid Continent Nail*, 725 F.3d at 1302; *see also ArcelorMittal*, 694 F.3d at 87 (if the scope language "is not ambiguous, the plain meaning of the language governs"); *Whirlpool Corp. v. United States*, 890 F.3d 1302, 1308 (Fed. Cir. 2018) (same).

Here, there was no ambiguity determination by Commerce. Nor are the Orders silent about whether a product consisting of a flexible magnet bonded to

11

plastic is covered by the scope language. Commerce concedes at the outset of its

scope ruling analysis that the unambiguous text of the Orders' scope provision

squarely applies to Siffron's Chinese-origin shelf dividers. Appx578. There was no

basis to resort to (k)(1) interpretive sources. Per Commerce's regulations and this

Court's precedent, Commerce's analysis should have been at an end. *E.g.*, *Mid*

*Continent Nail*, 725 F.3d at 1303 (noting, in the context of a mixed media product,

"if an order stated, for example, that 'all subject merchandise is subject to {the

order}, whether or not it is sold or shipped with non-subject merchandise,' then the

scope analysis would be at an end.").

### 2. Even if Permitted to Consider (k)(1) Sources, Commerce Misused Those (k)(1) Sources to Change the Scope of the Orders.

Commerce does not have license to disregard the text of the Orders or use

(k)(1) sources to contradict the unambiguous language of the Orders. *OMG, Inc. v.*

*United States,* 972 F.3d 1358, 1363 (Fed. Cir. 2020); *Duferco Steel,* 296 F.3d at

1094-95. Commerce's scope ruling violated this fundamental tenet, thus rendering

the ruling unlawful. *Eckstrom Indus., Inc., v. United States,* 254 F.3d 1068, 1072

(Fed. Cir. 2001).

Expressly included within the scope of the Orders are flexible magnets

bonded to any "plastic, or other material, of any composition." Appx33. Commerce

agrees that the Siffron shelf dividers consist of a flexible magnet (as defined in the

Orders) bonded to a piece of plastic, and as noted, concedes that the product

appears to fall within the scope of the Orders. Appx578. No party asserts that the

single textual exclusion for printed magnets applies to Siffron's shelf dividers. The

Orders are unequivocal: "All products meeting the physical description of the

subject merchandise that are not *specifically excluded* are within the scope of these

Orders." Appx33 (emphasis added).

Commerce, however, refused to apply the Orders as written. It instead

resorted to (k)(1) sources not as guides for interpreting ambiguous language, but

rather to justify excluding Siffron's magnetic shelf dividers covered by and not

explicitly excluded from the scope language. Purporting to rely on language from

the ITC report from the investigation and prior scope rulings, Commerce

disregarded the actual language and relied on self-generated exclusions for: (a)

flexible magnets bonded to "functionally inflexible" materials and/or (b) flexible

magnets that are within the terms of the scope language but nevertheless are

somehow "substantially different" products. The scope language does not

specifically exclude either category. In relying on those impermissibly constructed,

extra-textual scope exclusions whose boundaries are free to expand or contract at

Commerce's whim, Commerce committed reversible error. *Duferco*, 296 F.3d at

1097 (Commerce cannot use (k)(1) sources to "substitute for language in the order

itself").

**E.    Commerce's Rationale for Determining Siffron's Magnetic Shelf Dividers to Be Outside the Scope of the Orders Does Not Withstand Scrutiny.**

**1.    The Orders Do Not Exclude Flexible Magnets Bonded to "Functionally Inflexible" Materials.**

Ignoring the unambiguous language of the Orders, Commerce determined the Siffron magnetic shelf dividers are outside the scope because the ITC Report from the investigation and the *InterDesign* scope ruling provide "that the bonding a raw flexible magnet to a functionally inflexible component rendered the flexible magnets outside the scope of the Orders." Appx579. The ITC report does not support Commerce's determination, and the *InterDesign* ruling is neither relevant nor persuasive as a (k)(1) source. Magnum will address each in turn.

Commerce's asserted scope exception for flexible magnets to which a functionally inflexible object is bonded relies on a misreading of the following sentence in the ITC staff report:

> In general, flexible magnets are permanent magnets that can be twisted, bent, slit, punched, coiled, or otherwise molded into any shape *without losing its (sic) magnetic properties*.

Appx579 (emphasis added). According to Commerce, this "description indicates that when, as with the plastic shelf divider, an item incorporating an otherwise flexible magnet cannot be twisted bent, or manipulated *without that item breaking*, the item can no longer be considered to be 'flexible.'" *Id.* (emphasis added). Commerce's reasoning is logically incoherent. The ITC's statement refers only to

14

the loss of magnetic properties. The ITC said nothing about materials bonded to a flexible magnet. Nor did the ITC say anything about the magnet or a material to which it is bonded "breaking" or being "rendered ineffective for its intended function." Loss of magnetic properties and "breaking" a component bonded to a flexible magnet are not the same, and loss of magnetic properties does not imply or indicate the other. Further, there is no evidence in the record that manipulating Siffron's shelf divider causes the bonded flexible magnet to lose its magnetic properties. The ITC report language does not support Commerce's analysis.

Commerce's reliance on the *InterDesign* ruling likewise is misplaced. It was in that prior scope ruling that Commerce became unmoored from the scope language. While the *InterDesign* products were bonded to flexible magnets covered by the Orders, Commerce created, for the first time, an additional requirement that the entire product to which a flexible magnet is bonded must also be flexible. In doing so, Commerce ignored the plain language of the Orders that specifically includes within scope flexible magnets that are bonded to paper, plastic, or other materials *of any composition* without regard to whether the combined product is pliable or is damaged or loses intended functionality if bent or twisted. Appx33.

Further, determining whether a magnet is a "flexible magnet," and thus covered by the Orders, is an objective determination: is the magnet a combination

of flexible binders (*e.g.*, polymers or rubber) and a material capable of being

permanently magnetized? By contrast, there are no criteria in the Orders by which

to assess whether material of any composition (*e.g.*, plastic) bonded to the flexible

magnet is "flexible" or "functionally flexible." For good reason, the Orders

expressly encompass all flexible magnets bonded to any material of any

composition (without regard to the degree of flex).

A flexible magnet remains a flexible magnet regardless of the material to

which it is bonded if it meets the compositional elements: flexible binders like

rubber and material capable of being magnetized. Commerce's effort to change the

scope of the Orders results in the administration of the Orders that is wholly

arbitrary, relying on the whim of whether Commerce personnel think a mixed-

media product is "functionally flexible." Inviting such "arbitrariness and

uncertainty into the process by which Commerce administers" these Orders is

improper, rendering the scope ruling arbitrary and contrary to law. *ArcelorMittal*,

694 F.3d at 90.

The aberrational *InterDesign* decision, and its application here, effectively

changed and displaced the language of the Orders. But Commerce "cannot

'interpret' an antidumping order so as to change the scope of that order, nor can

Commerce interpret an order in a manner contrary to its terms." *Eckstrom*, 254

F.3d at 1072. By extension, a Commerce ruling—like *InterDesign*—that changes

the terms of the Orders' scope—and is contrary to the actual text—should be accorded no value as an interpretative guide under 19 CFR 351.225(k)(1). *InterDesign* provides no support for Commerce' ruling, and Commerce's reliance on that prior scope ruling was improper.

Apart from being contrary to law, *InterDesign* is irrelevant to the product at issue. *InterDesign* involved products that were rigid. While Commerce referred to Siffron's product as including a "rigid plastic blade," that finding is not supported by substantial evidence. *Sunpreme*, 946 F.3d at 1308 ("A decision is supported by substantial evidence if the evidence amounts to 'more than a mere scintilla' and 'a reasonable mind might accept [it] as adequate to support a conclusion.'"). To the contrary, the only evidence in the record shows that the Siffron product includes plastic that is flexible.

Magnum introduced evidence to show that Siffron's magnetic dividers could be flexed and indeed bent back on themselves. Appx332-335, 348-350. In response, Siffron introduced evidence claiming to show that excessive bending of the magnetic dividers created a visible crease in the plastic to which the flexible magnet was bonded. Appx361, 565, 566, 567, 568. Importantly, Siffron did not show (and did not argue) that the extreme flexing of the plastic dividers resulted in the flexible magnet losing its magnetic properties. Nor did it contend the plastic is rigid as it demonstrated its flexibility in the videos.

The dispute, then, is not whether Siffron's plastic dividers are rigid or inflexible (they plainly are flexible). Commerce tacitly acknowledges that the plastic blades are flexible. Appx579. The question is whether the Orders are concerned with the aesthetics of a product when considering the intended end use of the product. Acknowledging the flexibility of Siffron's plastic dividers, Commerce stated that "twisting or bending the shelf divider would damage the plastic blade and render the product ineffective for its intended function as a product organizer." *Id.* (internal quotations omitted). But the plain language of the Orders makes no reference to the aesthetics of a product or whether twisting or bending the product renders it "ineffective for its intended function as a product organizer." Appx33. Nor does Commerce cite anything from the investigation suggesting that such aesthetic considerations had any bearing on the scope of the Orders.

Here, the parties and the CIT agree that Siffron's products meet the physical description of subject merchandise. The products consist of a covered flexible magnet that is bonded to a piece of plastic. The products do not meet the specific exclusion listed in the Orders for printed magnets. Commerce cannot rely on prior scope rulings and a sentence from the ITC report to create and apply a "functionally inflexible" exclusion. Such a determination directly contradicts the plain language of the Orders and is unlawful. *Eckstrom*, 254 F.3d at 1072.

18

> 2. **Commerce 's "Substantial Difference" Test of a Bonded Flexible Magnet Contradicts the Plain Language of the Orders.**

Relying on *Medical Action Industries* ("*MAI*"), Commerce asserted that "the *addition* of another material, *i.e.*, a plastic blade, to a raw flexible magnet has created a product that is substantially different from a flexible magnet covered by the scope of the Orders" and consequently, "Siffron's plastic shelf dividers are outside the scope of the Orders." Appx580 (emphasis added).

First, contending that bonding a "plastic blade" to a flexible magnet creates a "substantially different" product excluded from the scope of the Orders directly contradicts the explicit language of the Orders. As noted, the Orders expressly cover flexible magnets "fully or partially bonded with paper, plastic, or other material, of any composition and/or color." Appx33.

Second, Commerce's reliance on *MAI* is misplaced. That ruling involved surgical drapes consisting of a plastic drape incorporating pockets that contained small flexible magnets. Appx20. Ruling the surgical drapes outside the scope of the Orders, Commerce emphasized the absence of bonding between the flexible magnets and plastic drapes. *Id. MAI* is not relevant and thus offers no support for Commerce's scope ruling.

## VII.  CONCLUSION

For the foregoing reasons, Magnum respectfully requests that the Court

reverse the CIT's judgment and vacate as unlawful Commerce's scope ruling that

Siffron's magnetic shelf dividers are outside the scope of the Orders.

Respectfully submitted,

*/s/ Jeremy William Dutra*
Jeremy William Dutra, Esq.

**SQUIRE PATTON BOGGS (US) LLP**
2550 M Street, NW
Washington, DC 20037
202-626-6237

*Counsel for Magnum Magnetics
Corporation*

Dated: January 19, 2024

# ADDENDUM

Slip Op. 23-140

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **MAGNUM MAGNETICS CORPORATION,** | |
| **Plaintiff,** | |
| **v.** | |
| **UNITED STATES,** | **Before: Jennifer Choe-Groves, Judge** |
| **Defendant,** | **Court No. 22-00254** |
| **and** | |
| **FASTENERS FOR RETAIL, INC. d/b/a SIFFRON,** | |
| **Defendant-Intervenor.** | |

## <u>OPINION AND ORDER</u>

[Sustaining the U.S. Department of Commerce's final scope ruling that certain plastic shelf dividers are excluded from the antidumping and countervailing duty orders on raw flexible magnets from the People's Republic of China.]

Dated:  September 26, 2023

<u>Jeremy W. Dutra</u>, <u>Richie T. Thomas</u>, and <u>Christopher D. Clark</u>, of Squire Patton Boggs (USA), LLP, Washington, D.C., for Plaintiff Magnum Magnetics Corporation.

<u>Claudia Burke</u>, Deputy Director, and <u>Daniel F. Roland</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C. for Defendant United States.  With them on the brief were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, and <u>Patricia M.</u>

McCarthy, Director.  Of counsel on the brief was K. Garrett Kays, Attorney, Office
of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of
Commerce.

Kristen Smith and Sarah E. Yuskaitis, of Sandler, Travis & Rosenberg, P.A.,
Washington, D.C., for Defendant-Intervenor Fasteners for Retail Inc. d/b/a Siffron.

 Choe-Groves, Judge:  Plaintiff Magnum Magnetics Corporation ("Plaintiff"
or "Magnum Magnetics") challenges the U.S. Department of Commerce's
("Commerce") final scope ruling that the plastic shelf dividers of Defendant-
Intervenor Fasteners for Retail, Inc. d/b/a Siffron ("Defendant-Intervenor" or
"Siffron") are excluded from the antidumping and countervailing duty orders on
raw flexible magnets from the People's Republic of China ("China").
Antidumping Duty and Countervailing Duty Orders on Raw Flexible Magnets
from the People's Republic of China: Final Ruling on Siffron Plastic Shelf
Dividers (A-570-922; C-570-923) (Aug. 9, 2022) ("Final Scope Ruling"), PR 18,
CR 11[1]; see Raw Flexible Magnets from the People's Republic of China, 73 Fed.
Reg. 53,847 (Sept. 17, 2008) (antidumping duty order); Raw Flexible Magnets
from the People's Republic of China, 73 Fed. Reg. 53,849 (Sept. 17, 2008)
(countervailing duty order) (collectively, "Orders").

 Before the Court is Plaintiff's Rule 56.2 Motion for Judgment Upon the

---

[1] Citations to the administrative record reflect the public record ("PR") and
confidential record ("CR") document numbers filed in this case.  ECF Nos. 28, 29.

Agency Record ("Plaintiff's Motion").  Pl.'s R. 56.2 Mot. J. Agency R. ("Pl.'s

Mot."), ECF No. 23; Pl.'s Mem. Points Authorities Supp. Pl.'s Mot. J. Agency R.

("Pl.'s Br."), ECF No. 23.  Defendant United States ("the Government" or

"Defendant") and Defendant-Intervenor oppose Plaintiff's Motion.  Resp. Br. Def.-

Interv. ("Def.-Interv.'s Resp."), ECF Nos. 24, 25; Def.'s Resp. Pl.'s Mot. J.

Agency R. ("Def.'s Resp."), ECF No. 26.  Plaintiff filed its reply.  Pl.'s Reply Br.

Further Supp. Rule 56.2 Mot. J. Agency R. ("Pl.'s Reply"), ECF No. 27.

 For the reasons discussed below, the Court sustains Commerce's Final

Scope Ruling as supported by substantial evidence and in accordance with law.

## BACKGROUND

 On September 17, 2008, Commerce issued antidumping and countervailing

duty orders for raw flexible magnets from the People's Republic of China.  See

Raw Flexible Magnets from the People's Republic of China, 73 Fed. Reg. at

53,847; Raw Flexible Magnets from the People's Republic of China, 73 Fed. Reg.

at 53,849.

 On March 11, 2022, Siffron filed a scope ruling request to determine

whether certain plastic shelf dividers, which consist of a raw flexible magnet that is

bonded with an adhesive to the base of a plastic sheet that is generally T- or L-

shaped, are covered by the scope of the Orders.  Letter from Sandler, Travis, &

Rosenberg, P.A. to Commerce, re: Raw Flexible Magnets from the People's

Republic of China and Taiwan: Scope Ruling Request for Fasteners for Retail, Inc.

[d/b/a] Siffron (Mar. 11, 2022) ("Siffron's Scope Ruling Request"), PR 1, CR 1–2.

On April 5, 2022, Magnum Magnetics filed comments on Siffron's Scope

Ruling Request and Commerce issued a supplemental questionnaire to Siffron.

Letter from Squire Patton Boggs (US) LLP to Commerce, re: Raw Flexible

Magnets from the People's Republic from China and Taiwan: Comments by

Magnum Magnetics Corporation on Scope Ruling Application from Fasteners for

Retail, Inc. [d/b/a] Siffron (Apr. 5, 2022), PR 11; Letter from Commerce, re: Raw

Flexible Magnets from the People's Republic of China: Scope Ruling Request

Fasteners for Retail, Inc. [d/b/a] Siffron (Apr. 5, 2022), PR 10; see also Letter from

Sandler, Travis & Rosenberg, P.A. to Commerce, re: Raw Flexible Magnets from

the People's Republic of China: Siffron's Response to Scope Inquiry Supplemental

Questionnaire (Apr. 7, 2022), PR 13, CR 4.

On April 11, 2022, Commerce initiated the scope inquiry. Mem. re:

Initiation of Fasteners for Retail, Inc. [d/b/a] Siffron (Siffron) Scope Inquiry (Apr.

11. 2022), PR 14. The Parties filed their respective comments. Letter from Squire

Patton Boggs (US) LLP to Commerce, re: Raw Flexible Magnets from the

People's Republic of China: Comments and Factual Information Submitted by

Magnum Magnetics Corporation to Rebut Assertions Contained in the Scope

Ruling Application from Fasteners for Retail, Inc. [d/b/a] Siffron (May 11, 2022)

("Magnum Magnetics' Rebuttal Comments"), PR 16, CR 5; Letter from Sandler,

Travis & Rosenberg, P.A. to Commerce, re: Raw Flexible Magnets from the

People's Republic of China: Siffron's Comments and Factual Information to Rebut

Comments and Factual Information Filed By Magnum Magnetics Corporation

(May 25, 2022) ("Siffron's Rebuttal Comments"), PR 17, CR 6–10.  Commerce

issued the Final Scope Ruling on August 9, 2022, determining that Siffron's plastic

shelf dividers bonded to raw flexible magnets are excluded from the scope of the

Orders.  See Final Scope Ruling.  Plaintiff filed this timely action.  See Am.

Summons, ECF No. 8; Compl., ECF No. 9.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to Section 516A(a)(2)(B)(vi) of the

Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(vi), and 28 U.S.C.

§ 1581(c).  The Court will hold unlawful any determination found to be

unsupported by substantial evidence on the record or otherwise not in accordance

with law.  19 U.S.C. § 1516a(b)(1)(B)(i).

"[W]hether the unambiguous terms of a scope control the inquiry, or

whether some ambiguity exists, is a question of law that [the Court reviews] de

novo."  Meridian Prods., LLC v. United States ("Meridian Products"), 851 F.3d

1375, 1382 (Fed. Cir. 2017).  "[W]hether a product meets the unambiguous scope

terms presents a question of fact reviewed for substantial evidence."  Id.

## DISCUSSION

### I.    Commerce's Scope Determination

The scope language of the <u>Orders</u> states in relevant part:

The products covered by this order are certain flexible magnets regardless of shape, color, or packaging.   Subject flexible magnets are bonded magnets composed (not necessarily exclusively) of (i) any one or combination of various flexible binders (such as polymers or co-polymers, or rubber) and (ii) a magnetic element, which may consist of a ferrite permanent magnet material (commonly, strontium or barium ferrite, or a combination of the two), a metal alloy (such as NdFeB or Alnico), any combination of the foregoing with each other or any other material, or any other material capable of being permanently magnetized.

Subject flexible magnets may be in either magnetized or unmagnetized (including demagnetized) condition, and may or may not be fully or partially laminated or fully or partially bonded with paper, plastic, or other material, of any composition and/or color.   Subject flexible magnets may be uncoated or may be coated with an adhesive or any other coating or combination of coatings.

Specifically excluded from the scope of this order are printed flexible magnets, defined as flexible magnets (including individual magnets) that are laminated or bonded with paper, plastic, or other material if such paper, plastic, or other material bears printed text and/or images, including but not limited to business cards, calendars, poetry, sports event schedules, business promotions, decorative motifs, and the like. This exclusion does not apply to such printed flexible magnets if the printing concerned consists of only the following: a trade mark or trade name; country of origin; border, stripes, or lines; any printing that is removed in the course of cutting and/or printing magnets for retail sale or other disposition from the flexible magnet; manufacturing or use instructions (*e.g.*, "print this side up," "this side up," "laminate here"); printing on adhesive backing (that is, material to be removed in order to expose adhesive for use such as application of laminate) or on any other covering that is removed from the flexible magnet prior or

subsequent to final printing and before use; non-permanent printing (that is, printing in a medium that facilitates easy removal, permitting the flexible magnet to be re-printed); printing on the back (magnetic) side; or any combination of the above.

All products meeting the physical description of subject merchandise that are not specifically excluded are within the scope of this order.

See Raw Flexible Magnets from the People's Republic of China, 73 Fed. Reg. at

53,847; Raw Flexible Magnets from the People's Republic of China, 73 Fed. Reg.

53,850.

Commerce determined initially that, "[a]ccordingly, based on the plain

language of the scope, Siffron's product appears to fall within the scope of the

Orders." Final Scope Ruling at 10. Commerce then looked to previous scope

rulings, record evidence, and language from the underlying International Trade

Commission ("ITC") investigation to provide further context, ultimately

determining that Siffron's products are excluded from the scope of the Orders. See

Final Scope Ruling at 10–12; see also Siffron's Scope Ruling Request at Att. 6,

Mem. from A. Elouaradia to C. Marsh, re: Final Scope Ruling on Certain Retail

Hook and Paper Towel Magnets (Jan. 10, 2011) ("InterDesign Scope Ruling");

Siffron's Scope Ruling Request at Att. 9, Mem. from L. Parkhill to C. Marsh, re:

Raw Flexible Magnets from the People's Republic of China; Scope Request from

Medical Action Industries–Final Scope Ruling on Raw Flexible Magnets from the

People's Republic of China (Jan. 10, 2011) ("MAI Scope Ruling"); Raw Flexible

Magnets from China and Taiwan, USITC Pub. 4030, Inv. Nos. 701-TA-452, 731-

TA-1129–1130 (Aug. 25, 2008) ("ITC Report").  Commerce reviewed the scope

language and distinguished between flexible and inflexible magnets, determining

that flexible magnets fall within the scope and inflexible magnets are outside the

scope.  Final Scope Ruling at 11.  Commerce explained that a flexible magnet can

be bent, twisted, or manipulated, but if affixed to a hard surface and changed such

that the magnet can no longer be bent, twisted, or manipulated, the magnet would

be rendered functionally inflexible and therefore would fall outside the scope of

the Orders.  Id.

Specifically, Commerce examined the InterDesign Scope Ruling, the ITC's

description of in-scope raw flexible magnets in this investigation, the MAI Scope

Ruling, and evidence on the record.  Id. at 10–12.  Commerce explained that in the

InterDesign Scope Ruling, Commerce previously determined that the bonding of a

raw flexible magnet to a functionally inflexible component rendered the flexible

magnet outside the scope of the Orders.  Id. at 11.  Commerce explained that the

ITC had determined similarly in its investigation that flexible magnets can be

twisted, bent, slit, punched, coiled, or otherwise molded into any shape, and when

an item incorporating an otherwise flexible magnet cannot be twisted, bent, or

manipulated without that item breaking, the item can no longer be considered

flexible.  Id.  Commerce determined that when Siffron's flexible magnets were

affixed to the component plastic blade of the shelf divider, the product became

"functionally inflexible" because the twisting or bending of the shelf divider

rendered the product ineffective for its intended function as a product organizer.

Id.  Based on a review of the MAI Scope Ruling, Commerce determined that

Siffron created a product that was "substantially different" than the raw flexible

magnet subject to the Orders when Siffron added another material, *i.e.*, the plastic

blade, to the raw flexible magnet.  Id. at 12.

Commerce determined that Siffron's product is outside the scope of the

Orders based on consideration of the plain scope language, the ITC Report,

Commerce's prior scope rulings, and record evidence.  Id.  Commerce did not

make a determination about the ambiguity of the scope language.  Id.

### A.    Parties' Contentions

Plaintiff challenges Commerce's scope determination on the following

grounds: (1) Commerce unlawfully excluded Siffron's product even though the

unambiguous text of the Orders covers the product; (2) the Orders do not expressly

or impliedly exclude flexible magnets bonded to rigid materials; (3) Commerce's

"substantial difference" test of a bonded magnet is an unauthorized exclusion from

the scope of the Orders; and (4) Commerce improperly incorporated a (k)(3)

element in a (k)(1) analysis.  Pl.'s Br. at 6–18.

The Government urges the Court to sustain Commerce's determination and enter judgment for the Government. Def.'s Resp. at 21. Defendant-Intervenor Siffron contends that Commerce's determination is supported by substantial evidence and in accordance with law, and asks the Court to sustain Commerce's determination that Siffron's product is outside the scope of the Orders. Def.-Interv.'s Resp. at 1.

## B.    Language of the Orders and (k)(1) Sources

The Court reviews de novo the question of whether the unambiguous terms of a scope control the inquiry. Plaintiff argues that Commerce did not identify ambiguity in the language in the Orders. Pl.'s Br. at 7. Plaintiff contends that the plain language of the Orders expressly denies Commerce the authority to "infer additional, unspecified exclusions." Id. at 8. Defendant asserts that Commerce has discretion to consider the (k)(1) sources in its initial evaluation of the scope language, without first making a determination of the existence of ambiguity in the scope language as "a condition precedent," based on the 2021 amendment to 19 C.F.R. § 351.225(k)(1). Def.'s Resp. at 8; see Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws, 86 Fed. Reg. 52,300 (Dep't of Commerce Sept. 20, 2021).

Courts have acknowledged that Commerce's review of the scope language is inseparable from consideration of the (k)(1) sources. See Meridian Prods. v.

United States, 890 F.3d 1272, 1277 (Fed. Cir. 2018) (stating that "the plain

language of an antidumping order is 'paramount,'" but that "[i]n reviewing the

plain language of a duty order, Commerce must consider" the (k)(1) sources);

Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States ("Shenyang

Yuanda"), 776 F.3d 1351, 1354 (Fed. Cir. 2015) ("First, Commerce must consider

the scope language contained in the order itself, the descriptions contained in the

petition, and how the scope was defined in the investigation and in the

determinations issued by Commerce and the ITC.").

        The Court of Appeals for the Federal Circuit ("CAFC") created a three-step

inquiry for evaluation of scope language in Meridian Products: "First, Commerce

must look to the text of an order's scope [pursuant to 19 C.F.R. § 351.225(k)(1)];

second, Commerce will consult descriptions of the merchandise in other sources;

and third, if still necessary, Commerce may consider additional factors comparing

the merchandise in question to merchandise subject to the order [pursuant to 19

C.F.R. § 351.225(k)(1)]." Meridian Products, 851 F.3d at 1381.  If the scope

language is found to be unambiguous, then it will govern.  Id. at 1381; see id. at

1381 n.7 ("The relevant scope terms are 'unambiguous' if they have 'a single

clearly defined or stated meaning.'") (citation omitted)).

        The current version of 19 C.F.R. § 351.225(k)(1) states:

> In determining whether a product is covered by the scope of the order
> at issue, the Secretary will consider the language of the scope and *may*
> make its determination on this basis alone if the language of the scope,
> including the descriptions of merchandise expressly excluded from the
> scope, is dispositive.

19 C.F.R. § 351.225(k)(1) (emphasis added).

Since the amendment of 19 C.F.R. § 351.225(k)(1), the U.S. Court of

International Trade has interpreted Commerce's revised regulation to reflect the

approach in Meridian Products.  See SMA Surfaces, Inc. v. United States, 47 CIT

__, __, 617 F. Supp. 3d 1263, 1273 (2023); id. at 1272 n.2 ("In September 2021,

Commerce promulgated a final rule that amended the text of 19 C.F.R.

§ 351.225(k)(1) to reflect the three-step inquiry [in Meridian Products] that had

been fashioned by the Federal Circuit's combining of case law and the prior code

provision.").

 The Court concludes that Commerce had the discretion to consider the

(k)(1) sources when determining whether the scope language plainly spoke to the

inclusion or exclusion of Siffron's product, without first characterizing the

existence of ambiguity as a condition precedent.

The Court now turns to whether Commerce properly interpreted the scope

language with the (k)(1) factors.

## II.    19 C.F.R. § 351.225(k)(1) Factors

Commerce may consider the following interpretive sources under section

(k)(1) to determine whether merchandise is covered by the scope of an order:

(A) The descriptions of the merchandise contained in the petition
pertaining to the order at issue;

(B) The descriptions of the merchandise contained in the initial
investigation pertaining to the order at issue;

(C) Previous or concurrent determinations of the Secretary, including
prior scope rulings, memoranda, or clarifications pertaining to both
the order at issue, as well as other orders with same or similar
language as that of the order at issue; and

(D) Determinations of the Commission pertaining to the order at issue,
including reports issued pursuant to the Commission's initial
investigation.

19 C.F.R. § 351.255(k)(1).  Secondary interpretive sources include any other

determinations of the Secretary or the Commission not identified above, Customs

rulings or determinations, industry usage, dictionaries, and any other relevant

record evidence.  Id.  If there is a conflict between these secondary interpretive

sources and the primary interpretive sources of this section, the primary

interpretive sources will normally govern in determining whether a product is

covered by the scope of the order at issue.  Id.

Commerce described the merchandise at issue as a plastic shelf divider with

a raw flexible magnet affixed to the base.  Final Scope Ruling at 2.  The plastic

shelf divider consists of a plastic blade, generally T- or L-shaped, and a raw

flexible magnet attached to the base of the plastic blade with adhesive tape.  Id.

Commerce determined that the plastic shelf divider is designed to display retail

merchandise produced by end users of the plastic shelf dividers, and the shelf

divider can be repositioned on a shelf with the raw flexible magnet without leaving

a sticky residue.  Id.

Commerce explained that it first determined whether Siffron's plastic shelf

dividers are excluded from the scope of the Orders based on the plain language.

Id. at 10.  Commerce stated that:

> The relevant language of the scope of the Orders includes flexible
> magnets "regardless of shape, color, or packaging."  Flexible magnets
> subject to the Orders may be fully or partially bonded to paper, plastic,
> or other materials or various flexible binders (e.g., polymers, co-
> polymers, rubber, etc.) of any composition or color.  Siffron's plastic
> shelf dividers are composed of an opaque and rigid plastic blade that is
> bonded with an adhesive to a raw flexible magnet at its base.
> Accordingly, based on the plain language of the scope, Siffron's
> product appears to fall within the scope of the Orders.

Id.

Plaintiff argues that Commerce's inquiry should stop there, with a

determination that Siffron's product falls squarely within the plain language of the

scope of the Orders.  See Pl.'s Br. at 6–8.  As the Court noted above, however,

Commerce has the discretion to consider the (k)(1) factors in its scope analysis

under the revised regulations, and the Court reviews Commerce's determination in

light of the (k)(1) sources that were considered by Commerce in addition to the

plain scope language.

Commerce considered the underlying ITC Report, the InterDesign Scope

Ruling, the MAI Scope Ruling, and record evidence in its interpretation of whether

Siffron's product fell outside the scope of the Orders.  See Final Scope Ruling at

10–12.

### A.    ITC Report

Plaintiff argues that Commerce's analysis is "logically incoherent" and

inconsistent with the ITC Report because Commerce's determination that an item

cannot be flexible if it cannot be twisted or bent without breaking does not

logically follow ITC's statement that a flexible magnet can be twisted or bent

without losing its magnetic properties.  See Pl.'s Br. at 9–10.  Defendant contends

that Plaintiff's reading of the ITC Report is too narrow, and that Commerce was

reasonable in its reading of the ITC Report because in both the ITC Report and the

instant case, the characteristics of an otherwise flexible magnet were altered and

resulted in a product with an inflexible magnet outside the scope of the Orders.

Def.'s Resp. at 12.  Defendant adds that Plaintiff does not undermine Commerce's

analysis on the functional inflexibility of the magnet once attached to the shelf

divider, but rather only focuses on the "loss of magnetic properties," even though a

flexible magnet must be both magnetic and flexible.  Id. at 13.  The Government

notes that Plaintiff does not dispute Commerce's conclusion that Siffron's raw

flexible magnets are functionally inflexible or that the plastic shelf divider would

be ineffective for its intended use if the plastic blade with the affixed magnet were

twisted, bent, or manipulated.  Id. at 12.

Because the ITC Report aided Commerce in interpreting whether the plastic

shelf dividers were excluded from the scope of the Orders when the magnets were

rendered functionally inflexible after affixation to Siffron's product, the Court

concludes that Commerce's consideration of the ITC Report as a (k)(1) source was

reasonable and in accordance with law.

### B.    Prior Scope Rulings

Plaintiff argues that Commerce's reliance on the InterDesign Scope Ruling

was flawed because the ruling misinterpreted another scope ruling that equated

"bendable" with "flexible" and created a flexibility requirement for the first time.

See Pl.'s Br. at 10–14; see also Mem. from L. Parkhill to J. Anderson, re: Final

Scope Ruling on Raw Flexible Magnets from People's Republic of China; Scope

[Ruling] Request from It's Academic (Mar. 4, 2010) ("It's Academic II Scope

Ruling").

Plaintiff challenges Commerce's reliance on the MAI Scope Ruling because

(1) the exclusion determined in the MAI Scope Ruling was based on the lack of

bonding between a magnet and the other material of the surgical instrument drapes

in question, but Plaintiff argues that the record is undisputed that the T- and L-shaped plastic elements in Siffron's plastic shelf dividers are not bonded to a flexible magnet; and (2) Commerce did not determine that additional functionality, or end-use application, due to the bonding of some paper, plastic, or another material to a flexible magnet, would render a product excluded in any other scope ruling.  See Pl.'s Br. at 14–16; Pl.'s Reply at 8–9.

Defendant argues that Plaintiff waived its arguments regarding the InterDesign Scope Ruling and the MAI Scope Ruling because Plaintiff did not discuss these scope rulings or issues in the administrative proceeding.  Def.'s Resp. at 15.  The Court observes that the Final Scope Ruling includes a reference to arguments raised by Magnum Magnetics during the administrative proceeding under the heading "Petitioner's Comments" as follows: "Commerce's determinations in the MAI Scope Ruling, InterDesign Scope Ruling, Smith-Western Scope Ruling, and Qwick Picz Scope Ruling that the term 'flexible magnets' suggest that raw flexible magnets that have been attached to other materials and rendered inflexible by such attachment, is improper because it is set against the unambiguous language of the scope of the Orders."  Final Scope Ruling at 7; see also id. at 12 ("Accordingly, after consideration of the plain language of the scope of the Orders, the [ITC Report], and Commerce's determinations in the InterDesign Scope Ruling, the Smith-Western Scope Ruling, and MAI Scope

Ruling, we find that Siffron's plastic shelf dividers are outside of the scope of the

Orders.").  Because the Final Scope Ruling mentions Plaintiff's arguments raised

regarding the InterDesign Scope Ruling and the MAI Scope Ruling, the Court

concludes that the scope rulings were challenged sufficiently during the

administrative proceedings and Plaintiff's arguments regarding these rulings are

not waived.

Defendant argues in the alternative that if the Court finds that Plaintiff's

arguments are not waived, the Court should reject these arguments because

Commerce's reliance on the prior scope rulings was reasonable under subsection

(k)(1).  Def's Resp. at 17–20.  Defendant-Intervenor asserts that Commerce's

reliance on the prior scope rulings was reasonable and aided Commerce in

interpreting the scope language in the Orders.  See Def.-Interv.'s Resp. at 14–16.

The scope language in the Orders includes "flexible magnets regardless of

shape, color, or packaging, that may or may not be fully or partially bonded with

paper, plastic, or other material," and the InterDesign Scope Ruling provided

Commerce with further guidance.  Specifically, Commerce stated that it relied on

the following analysis in the InterDesign Scope Ruling:

> [T]he scope's provision that raw flexible magnets can be bonded with
> "paper, plastic, or other material, of any composition" does not extend
> to the point that the material renders the flexible magnet to be no longer
> flexible.  As the first sentence of the scope of the [Orders] indicates that
> it pertains to flexible magnets, this suggests that magnets that have been

rendered inflexible by attached materials should be outside the scope of
the [Orders].  Thus, the scope of the [Orders] itself indicates that all five
categories of InterDesign's magnet products are outside of the scope.

Final Scope Ruling at 11.

The Court observes that Commerce placed significant emphasis on the
flexible nature of the magnets, as specified in the first sentence of the scope
provision.  In the InterDesign Scope Ruling, Commerce determined that certain
retail hook and paper towel magnets were outside the scope of the Orders because
the magnets were attached to materials that were not flexible.  InterDesign Scope
Ruling at 11.  Commerce relied in this case on the InterDesign Scope Ruling to
determine that Siffron's product is not "flexible" because the plastic shelf dividers
could not be physically manipulated without damaging the product due to the
bonding of the raw flexible magnets with a plastic blade.  Final Scope Ruling at 11.
Commerce determined that Siffron's product would lose its required opacity and
not return to its shape to function as a shelf organizer if subject to physical
manipulation and the product became "functionally inflexible."  Id.

The Court does not agree with Plaintiff that Commerce added a new
flexibility requirement because the first sentence of the scope of the Orders
specifies that subject merchandise must be flexible.  Commerce's reliance on the
InterDesign Scope Ruling was reasonable as a (k)(1) source because the prior
scope ruling is a permissible source and provided guidance to Commerce's

interpretation of the scope language. The Court concludes that Commerce's

interpretation is reasonable that a product rendered "functionally inflexible" is no

longer flexible and is therefore outside the scope of the Orders.

Plaintiff challenges Commerce's reliance on the MAI Scope Ruling, arguing

that the exclusion of the merchandise in the MAI Scope Ruling was based on the

lack of bonding between a magnet and another material, unlike Siffron's product

that bonded a magnet and another material. Pl.'s Reply at 13–15. Defendant

contends that the facts in the MAI Scope Ruling differed and hinged on whether a

magnet was "bonded" with another material. Def.'s Resp. at 19.

Commerce considered the MAI Scope Ruling and agreed with Siffron that

the plastic shelf dividers were a functionally different product than raw flexible

magnets subject to the scope of the Orders. Final Scope Ruling at 12. Commerce

noted that in the MAI Scope Ruling, Commerce determined that in the construction

of surgical instrument drapes, MAI created a product that was "substantially

different" than a raw flexible magnet because the attachment of a sheet of foam

and a sheet of plastic film to a raw flexible magnet produced an item that expanded

the capabilities of the incorporated raw magnet. Id. Commerce determined that

Siffron added the plastic blade, similar to MAI's surgical drape, to a raw flexible

magnet to create a product that was substantially different from a flexible magnet

subject to the scope of the Orders. Id. Commerce reasoned that the combination

of the plastic blade, which is rigid to effectively display retail products on a shelf, and the raw magnet, which permits the plastic shelf divider to move on a metal surface without leaving residue, allows Siffron's product to be a shelf organizer in a retail setting that separates retail products for display.  See id.

While the Orders do not include language about whether covered merchandise must be able to carry out its intended function (other than simply being a raw flexible magnet) when the raw magnet is bonded to paper, plastic, or other material, the Court concludes that Commerce's reliance on the MAI Scope Ruling was reasonable as a permissible (k)(1) source that assisted Commerce with its scope analysis.  The Court concludes that Commerce's interpretation is reasonable that the addition of another material to a raw flexible magnet can render the product "substantially different" from a raw flexible magnet and thus outside the scope of the Orders.  Therefore, Commerce's consideration of the prior scope rulings as a (k)(1) source was reasonable and in accordance with law.

The Court concludes that the scope language, when read together with the (k)(1) sources, unambiguously establishes that the Orders exclude products that have been altered and resulted in a product with a "functionally inflexible" magnet, and products to which a flexible magnet was attached and rendered into a "substantially different" product from a raw flexible magnet.

### C.    Substantial Evidence Analysis

Whether a product meets the unambiguous scope terms presents a question of fact reviewed for substantial evidence.  Meridian Products, 851 F.3d at 1382.

Commerce considered the descriptions of the merchandise contained in Siffron's Scope Ruling Request to identify the product subject to the scope inquiry in its (k)(1) analysis.  Final Scope Ruling at 2–3.  Notably, Plaintiff does not challenge Commerce's review of record evidence or lack thereof, contending only in general terms that "[t]he [Final Scope] Ruling interprets and applies the Orders in a manner that changes their scope contrary to their plain language and is therefore unsupported by substantial evidence."  Pl.'s Br. at 6.

Commerce described the subject merchandise as follows:

The product at issue is a plastic shelf divider with a raw flexible magnet affixed to the base.  The plastic shelf divider consists of a plastic blade, generally T- or L-shaped, and a raw flexible magnet that is attached to the base of the plastic blade with an adhesive tape.  The plastic shelf divider can be clear or opaque in color, or manufactured in a color specific to meet the end users' needs.  The magnet is a raw flexible magnet that is designed to be flexible, so it is easy to cut and shape.

The plastic shelf divider is designed to sit on retail shelving to aid in displaying merchandise produced by end users of the plastic shelf divider.  The raw flexible magnet affixed to the base of the plastic blade of the plastic shelf divider allows for the shelf divider to be repositioned on a shelf without leaving a sticky residue on the shelf. . . .

The plastic shelf dividers are classified under the Harmonized Tariff Schedule of the United States (HTSUS) subheading 8505.19.2000, which provides for, "Electromagnets; permanent magnets and articles

intended to become permanent magnets after magnetization;
electromagnetic or permanent magnet chucks, clamps and similar
holding devices; electromagnetic couplings, clutches and brakes;
electromagnetic lifting heads; parts thereof: Permanent magnets and
articles intended to become permanent magnets after magnetization:
Other: Composite good containing flexible magnets."

Final Scope Ruling at 1–2 (citing Siffron's Scope Ruling Request at 3, 5, 6, 11, 13,

and 14).  The Court observes that in addition to considering Siffron's descriptions

of the merchandise, Commerce cited evidence in Siffron's Scope Ruling Request.

See Siffron's Scope Ruling Request at Att. 1 (schematics of plastic shelf dividers),

Att. 2 (photograph of plastic shelf dividers), Att. 3a (photograph of different types

of shelf dividers), and Att. 3b (schematics of different types of shelf dividers).  The

Court observes that Commerce examined additional record evidence to support its

determinations that: (1) Siffron's product is functionally inflexible because the

bonding of the raw flexible magnets with an adhesive to the plastic blade renders it

inflexible to the extent that it cannot be manipulated without damaging the product,

Final Scope Ruling at 11 (citing Siffron's Rebuttal Comments at Atts. 5, 6, 7, and

12) (including videos demonstrating different sizes of plastic shelf dividers being

bent and twisted); and (2) the addition of a plastic blade renders Siffron's product

"substantially different" from raw flexible magnets subject to the scope of the

Orders, id. at 12 (citing Siffron's Scope Ruling Request at 7–13 (including Att. 2

(photograph of plastic shelf dividers), Att. 4 (photograph labeled "Marketing of

Court No. 22-00254                                                    Page 24

Plastic Shelf Dividers), and Att. 5 (photographs of flexible magnets)) and Siffron's

Rebuttal Comments at 4, 9 (including Att. 1 (photograph of plastic shelf dividers as

organizational tool) and Atts. 5, 6, 7, and 12 (videos demonstrating different sizes

of plastic shelf dividers being bent and twisted)).  The Court observes that

Commerce also cited a photograph provided by Siffron of magnet components that

had been removed from a sample plastic shelf divider.  Final Scope Ruling at 11–

12 (citing Siffron's Rebuttal Comments at Att. 10).

Because Commerce supported its determination that Siffron's product is

outside the scope of the Orders with citations to record evidence and product

descriptions provided by Siffron, the Court concludes that Commerce's

determination is supported by substantial evidence.

Accordingly, Commerce's determination that Siffron's product is outside the

scope of the Orders is in accordance with law and supported by substantial

evidence.

### III.    19 C.F.R. § 351.225(k)(3) Factors

Plaintiff argues that Commerce improperly intermixed and relied on a single

element from a (k)(3) analysis in its purported (k)(1) analysis, resulting in a scope

determination that is arbitrary and contrary to law.  Pl.'s Br. at 17–18; Pl.'s Reply

at 17–18.

Defendant asserts that Commerce did not conduct a (k)(3) analysis and counters that Commerce's discussion of the (k)(3) factor was to reject Plaintiff's argument that Siffron's plastic shelf dividers are within the scope of the <u>Orders</u> because the raw magnet can be removed separately to be potentially repackaged and resold as a raw flexible magnet.  Def.'s Resp. at 20–21.

Under a (k)(3) analysis, Commerce can consider three factors:

(A)  The practicability of separating the in-scope component for repackaging or resale, considering the relative difficulty and expense of separating the components;

(B)  The measurable value of the in-scope component as compared to the measurable value of the merchandise as a whole; and

(C)  The ultimate use or function of the in-scope component relative to the ultimate use or function of the merchandise as a whole.

19 C.F.R. § 351.225(k)(3).

In Magnum Magnetics' Rebuttal Comments, Plaintiff argued that a (k)(3) analysis of Siffron's plastic shelf dividers would demonstrate that the products are within the scope of the <u>Orders</u> because (1) separating the plastic component from the flexible magnet requires little effort; (2) the flexible magnet can be readily reused, repackaged, or resold after separating the flexible magnet from the plastic shelf divider; (3) the "measurable value" of the flexible magnet component of the plastic shelf divider is substantial compared to the measurable value of the plastic shelf divider as a whole; and (4) the flexible magnet is a central feature of the shelf

dividers.  See Magnum Magnetics' Rebuttal Comments at 12–15; Final Scope

Ruling at 8.

Commerce determined that it was unnecessary to consider (k)(2) and (k)(3)

factors in its analysis.  Final Scope Ruling at 10.  Commerce explained in the Final

Scope Ruling that it disagreed with Plaintiff's argument that the flexible magnet

can be readily reused, repackaged, or resold after separating the flexible magnet

from the plastic shelf divider.  Id. at 11.  Commerce reasoned that rejecting

Plaintiff's (k)(3) argument was appropriate because the record evidence showed

that the adhesive that bonds the flexible magnet to the plastic blade remains on the

magnet, Siffron's product is not the same as a pre-affixed raw flexible magnet,

which does not contain such adhesive, and Siffron's product is shipped as a whole

product so the raw flexible magnet cannot be removed to be used as a separate

product.  Id. at 11–12.

The Court agrees with the Government that Commerce did not actually

conduct a (k)(3) analysis, but in the Final Scope Ruling merely responded to, and

ultimately rejected, Plaintiff's proposal that Commerce should conduct a (k)(3)

analysis.  The Court concludes that Commerce's determination that Siffron's

product is excluded from the language of the Orders is based solely on the scope

language read together with the (k)(1) sources, and without any (k)(3) factors in its

analysis.

Court No. 22-00254                                                          Page 27

## CONCLUSION

In summary, the Court concludes that the scope language, when read together with the (k)(1) sources, unambiguously establishes that the <u>Orders</u> do not include Siffron's plastic shelf dividers.  The Court sustains Commerce's determination that Siffron's plastic shelf dividers are excluded from the scope of the <u>Orders</u> as in accordance with law and supported by substantial evidence.

Accordingly, it is

**ORDERED** that Plaintiff's Rule 56.2 Motion for Judgment Upon the Agency Record, ECF No. 23, is denied; and it is further

**ORDERED** that Commerce's Final Scope Ruling is sustained. Judgment will issue accordingly.

   /s/ Jennifer Choe-Groves   
Jennifer Choe-Groves, Judge

Dated:   September 26, 2023   
      New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **MAGNUM MAGNETICS CORPORATION,** | |
| **Plaintiff,** | |
| **v.** | |
| **UNITED STATES,** | **Before: Jennifer Choe-Groves, Judge** |
| **Defendant,** | **Court No. 22-00254** |
| **and** | |
| **FASTENERS FOR RETAIL, INC. d/b/a SIFFRON,** | |
| **Defendant-Intervenor.** | |

### <ins>JUDGMENT</ins>

This case having been duly submitted for decision, and the Court, after due deliberation, having rendered a decision; now therefore, in conformity with said decision, it is hereby

**ORDERED** that Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record, ECF No. 23, is denied; and it is further

**ORDERED** that Commerce's Final Scope Ruling is sustained.

         <ins>/s/ Jennifer Choe-Groves</ins>
         Jennifer Choe-Groves, Judge

Dated: <ins>September 26, 2023</ins>
       New York, New York

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2024-1164

**Short Case Caption:** Magnum Magnetics Corp v. US

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✔] the filing has been prepared using a proportionally-spaced typeface and includes 4,375 words.

[ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 01/19/2024          Signature:  /s/ Jeremy William Dutra

                          Name:  Jeremy William Dutra

Save for Filing