## 24-1164

IN THE

# United States Court of Appeals

## FOR THE FEDERAL CIRCUIT

◆◆

MAGNUM MAGNETICS CORP.,

*Plaintiff-Appellant,*

— v. —

UNITED STATES, FASTENERS FOR RETAIL, INC., dba Siffron,

*Defendants-Appellees.*

UNITED STATES COURT OF INTERNATIONAL TRADE
JUDGE JENNIFER CHOE-GROVES
22-CV-00254

## BRIEF FOR DEFENDANT-APPELLEE
## FASTENERS FOR RETAIL, INC., DBA SIFFRON

KRISTEN SMITH
SANDLER, TRAVIS & ROSENBERG, P.A.
1300 Pennsylvania Avenue, NW, Suite 400
Washington, DC 20004
(202) 216-9307

*Attorneys for Defendant-Appellee*
  *Fasteners for Retail, INC., dba Siffron*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ..................................................... ii

STATEMENT OF RELATED CASES .......................................... 1

STATEMENT OF THE ISSUES.............................................. 2

STATEMENT OF THE CASE SETTING FORTH THE RELEVANT
FACTS ...................................................................... 2

    I.    The Scope of the *Orders* and Commerce's Final Scope
        Ruling.................................................................. 2

    II.  Proceeding Before the Court of International Trade................. 7

    III. Administrative Determination Under Review........................ 8

SUMMARY OF ARGUMENT............................................... 9

ARGUMENT ............................................................... 10

    I.    Standard of Review...................................................... 10

    II.  The Court of International Trade Correctly Affirmed
        Commerce's Final Scope Ruling ...................................... 13

        A. The CIT Properly Determined that Commerce Has
           Discretion to Consider (k)(1) Sources ........................... 13

        B. The Final Scope Ruling Properly Interpreted the Scope
           Language in Consideration of the (k)(1) Factors................. 18

           i.    The ITC Injury Report Supports Commerce's
               Determination that Siffron's Plastic Shelf Dividers
               are Not Covered By the *Orders* ............................ 19

           ii.   Commerce's Final Scope Ruling is Consistent with
               Its Previous Scope Rulings ................................. 21

CONCLUSION.............................................................. 26

# <u>TABLE OF AUTHORITIES</u>

PAGE(S)

## Cases

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
  802 F.3d 1339 (Fed. Cir. 2015) ............................................. 10

*Allegheny Bradford Corp. v. United States*,
  342 F. Supp. 2d 1172 (Ct. Int'l Trade 2004) ............................ 25

*Am. Silicon Techs. v. United States*,
  261 F.3d 1371 (Fed. Cir. 2001) ............................................. 12

*Changzhou Wujin Fine Chem. Factory Co. v. United States*,
  701 F.3d 1367 (Fed. Cir. 2012) ............................................. 12

*CS Wind Vietnam Co. v. United States*,
  832 F.3d 1367 (Fed. Cir. 2016) ............................................. 12

*Gallant Ocean (Thailand) Co. v. United States*,
  602 F.3d 1319 (Fed. Cir. 2010) ............................................. 11

*Goldlink Indus. Co. v. United States*,
  431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ............................ 13

*King Supply Co., LLC v. United States*,
  674 F.3d 1343 (Fed. Cir. 2012) ............................................. 13

*Matsushita Elec. Indus. Co. v. United States*,
  750 F.2d 927 (Fed. Cir. 1984) ............................................... 11

*Meridian Prods. v. United States*,
  890 F.3d 1272 (Fed. Cir. 2018) ............................................. 14

*Mid Continent Nail Corp. v. United States*,
  725 F.3d 1295 (Fed. Cir. 2013) ...................................... 13, 25

*Motor Vehicle Mfrs. Ass'n of United States v. State Farm Mut.
Automobile Ins. Co.*,
  463 U.S. 29 (1983) .......................................................... 12

*Nan Ya Plastics Corp. v. United States*,
  810 F.3d 1333 (Fed. Cir. 2016) ...................................... 10, 11

ii

PAGE(S)

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006) ............................................. 11

*NMB Sing. Ltd. v. United States*,
    557 F.3d 1316 (Fed. Cir. 2009) ............................................. 12

*In re NuVasive, Inc.*,
    842 F.3d 1376 (Fed. Cir. 2016) ............................................. 12

*SMA Surfaces, Inc. v. United States*,
    47 CIT_, 617 F. Supp. 3d 1263 (2023) .................................... 16

*Sandvik Steel Co. v. United States*,
    164 F.3d 596 (Fed. Cir. 1998) .............................................. 13

*Shenyang Yuanda Aluminum Industry Engineering Co., Ltd. v. United States*,
    776 F.3d 1351 (Fed. Cir. 2015) ............................................. 15

*Universal Camera Corp. v. NLRB*,
    340 U.S. 474 (1951) ......................................................... 11

*Vietnam Finewood Company Limited v. United States*,
    2023 WL 3019662, Slip Op. 23-58, 7
    (Ct. Int'l Trade, Apr. 20, 2023) ........................................... 15

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ............................................. 10, 11

**Regulations**

19 C.F.R. § 351.225 ........................................................ 9

19 C.F.R. § 351.225(d)(1) .................................................. 5

19 C.F.R. § 351.225(k)(1) ............................................ *passim*

19 C.F.R. § 351.225(k)(1)(i) ............................................ 16, 18

19 C.F.R. § 351.225(k)(1)(i)(a)-(d) ....................................... 16

19 C.F.R. § 351.225(k)(2) ................................................. 7

19 C.F.R. § 351.225(k)(3) ................................................. 7

iii

PAGE(S)

19 C.F.R. § 351.225(m)(2) ..................................................... 5

**Other Authorities**

*Regulations To Improve Administration and Enforcement of*
*Antidumping and Countervailing Duty Laws*,
86 Fed. Reg. 52,300, 52,323 (Sept. 20, 2021) ........................... 17

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Rule 47.5, counsel for Defendant-Appellee Fasteners for Retail, Inc., dba Siffron is unaware of any other appeal in or from this action that was previously before this Court or any other appellate court.  Defendant-Appellee's counsel is also unaware of any other cases pending in this or any other court that may directly affect or be directly affected by this Court's decision in this appeal.

Defendant-Appellee Fasteners for Retail, Inc., dba Siffron ("Siffron") respectfully submits this brief to respond to the brief of Plaintiff-Appellant Magnum Magnetics Corp. ("Magnum") dated January 19, 2024, ECF No. 14 ("App. Br."). This action is an appeal from the final judgment of the U.S. Court of International Trade ("CIT") in *Magnum Magnetics Co. v. United States*, Ct. No. 22-00254, Slip Op. 23-140 (Ct. Int'l Trade Sept. 26, 2023), Appx1-27.

## STATEMENT OF THE ISSUES

Whether the Court of International Trade ("CIT") erred in affirming the U.S. Department of Commerce's ("Commerce") determination that Siffron's magnetic shelf dividers are outside the scope of the antidumping and countervailing duty orders concerning *Raw Flexible Magnets from the People's Republic of China* (the "*Orders*"), where Commerce's determination was in accordance with law, was supported by substantial evidence, and was otherwise reasonable and lawful.

## STATEMENT OF THE CASE SETTING FORTH THE RELEVANT FACTS

### I.    The Scope of the *Orders* and Commerce's Final Scope Ruling

On September 17, 2008, Commerce issued antidumping and countervailing duty orders on flexible magnets from the People's Republic of China (collectively, the "*Orders*").  Appx33-34; Appx35-36.  The *Orders* define, in relevant part, their scope as follows:

The products covered by this order are certain *flexible* magnets regardless of shape, color or packaging. Subject *flexible* magnets are bonded magnets composed (not necessarily exclusively) of (i) any one or combination of various flexible binders (such as polymers or co-polymers, or rubber) and (ii) a magnetic element, which may consist of a ferrite permanent main material (commonly, strontium or barium ferrite, or a combination of the two), a metal alloy (such as NdFeB or Alnico), any combination of the foregoing with each other or any other material, or any other material capable of being permanently magnetized.

Subject *flexible* magnets may be in either magnetized or unmagnetized (including demagnetized) condition, and may or may not be fully or partially laminated or fully or partially bonded with paper, plastic, or other material, of any composition and/or color. Subject flexible magnets may be uncoated or may be coated with an adhesive or any other coating or combination of coatings.

Appx33, Appx36 (emphasis added).

On March 11, 2022, Siffron filed a scope ruling request at Commerce, asking Commerce to confirm that its plastic shelf dividers fall outside the scope of the *Orders*. Appx43-45. Siffron's Scope Request highlights the rigidity of the plastic shelf divider, noting that the product is "manufactured using rigid PVC material that is produced using an extrusion process" and the magnet is attached to the plastic divider's rigid plastic base using adhesive. Siffron's Scope Request, Appx.46-47. Siffron provided the following details of its products under consideration:

{P}lastic dividers, designed for use in a retail setting to organize and display merchandise.

3

The plastic shelf divider consists of a rigid plastic blade with a plastic base. The dividers are typically T- or L-shaped. A flexible magnet, which is attached to the divider using adhesive, provides the means of attachment to an existing shelf. The plastic shelf divider is reusable and may be moved and repositioned to best serve the needs of the retailer to display and organize merchandise.

The plastic shelf divider may be opaque or transparent depending upon the retailer's preference to block vision of the product or enhance vision of packaging or brands. Some retailers choose to match the plastic shelf divider color with shelf color.

Plastic shelf dividers are manufactured to match the width of standard shelf sizes and are available in stock lengths of 8 to 24 inches in length and 1.5-4.5 inches in height. Plastic shelf dividers may also be custom made to fit a particular shelf, including customized shapes and dimensions.

Appx45; Appx46-47.

Siffron's Scope Request supported its scope ruling request with pertinent (k)(1) sources, including Commerce's previous scope rulings and referenced the International Trade Commission's ("ITC") Injury Report. Appx88. Siffron's Scope Request also provided references to the *MAI Scope Ruling*,[1] *InterDesign Scope Ruling*,[2] *Smith-Western Scope Ruling*,[3] and *Qwik Picz Scope Ruling*,[4] in which Commerce deemed advanced products not subject to the scope of the *Orders*.

---

[1] Appx121-131.
[2] Appx88-99.
[3] Appx100-108.
[4] Appx109-120.

Appx50-52.   Notably, with respect to the *InterDesign Scope Ruling*, Commerce deemed finished goods that incorporated magnets as a component to be outside the scope of the *Orders* where the magnet has been rendered inflexible.   Appx51; Appx88-99.  Magnets rendered inflexible were also deemed outside the scope of the *Orders* in *Smith-Western Scope Ruling* and *Qwik Picz Scope Ruling*.   Appx52; Appx100-120.  The domestic industry did not appeal these final scope rulings.

On April 5, 2022, Commerce issued Siffron a supplemental questionnaire requesting a list of all plastic shelf dividers produced by Siffron that incorporate raw flexible magnets, including a name, picture, product code, and schematic drawing for each type of product.  Appx152-153.  In response, Siffron provided the requested information for all products broken down by category of plastic shelf dividers. Appx171-178.

On April 11, 2022, Commerce accepted Siffron's scope application and initiated the scope inquiry pursuant to 19 C.F.R. §§351.225(d)(1), (m)(2).  Appx326-327.

Plaintiff submitted comments and factual information pertaining to Siffron's scope application on May 11, 2022.  Appx328-343.  Siffron submitted rebuttal comments and factual information in response to Plaintiff's submission.  Appx353-368.   As part of the response, in part, Siffron provided factual information demonstrating that: (1) Siffron's plastic shelf dividers are a more advanced product

5

than a raw flexible magnet and (2) bending and twisting the product ruins the product, rendering it not usable for its intended use. Appx361. Siffron provided Commerce with videos demonstrating different sizes of its plastic shelf dividers being bent and twisted. Appx565; Appx566; Appx567; Appx568. The videos demonstrate that "the plastic shelf divider no longer goes back to its original form as a shelf divider" after bending and/or twisting. Appx361; *see also* Appx565; Appx566; Appx567; Appx568. Following bending and/or twisting, the plastic shelf divider cannot be used. Additionally, "the opaque, see-through nature of the plastic is destroyed, and the plastic shelf divider can no longer be used to organize the products being displayed." Appx361.

On August 9, 2022, Commerce issued its Final Scope Ruling confirming that Siffron's plastic shelf dividers were outside the scope of the *Orders*. Appx569-581. Commerce determined that its "previous scope ruling and language from the underlying ITC investigation provide further guidance in determining whether the plastic shelf dividers are excluded." Appx.578-579. Commerce, as it found in the *InterDesign Scope Ruling*, "found that bonding of a raw flexible magnet to a functionally inflexible component rendered the flexible magnets outside the scope of the *Orders*." Appx579. Commerce found that Siffron "demonstrated that bonding raw flexible magnets with an adhesive to a plastic blade renders the plastic shelf dividers inflexible to the extent that the plastic shelf divider cannot be

manipulated without damaging the product." *Id.* (citing Siffron's Rebuttal Factual Information. Appx.361; Appx565; Appx566; Appx567; Appx568).

Commerce also found that Siffron's "plastic shelf dividers are a functionally different product than that of raw flexible magnets subject to the scope of the *Orders*." Appx580.  After considering the plain language of the scope of the *Orders*, the ITC injury investigation, and Commerce's determinations in the *InterDesign Scope Ruling*, the *Smith-Western Scope Ruling*, and *MAI Scope Ruling*, Commerce found that Siffron's plastic shelf dividers are outside of the scope of the *Orders*.  *Id.* In this case, because Commerce determined that the 19 C.F.R. § 351.225(k)(1) factors were dispositive, Commerce did not consider the (k)(2) or (k)(3) factors, deeming such consideration unnecessary.  Appx578.

## II.    <u>Proceeding Before the Court of International Trade</u>

On appeal, the CIT affirmed Commerce's Final Scope Ruling.  Appx1-27. The CIT found that Commerce has the discretion to consider the (k)(1) factors in its scope analysis under the revised regulations.  Appx12.  Furthermore, the CIT reviewed Commerce's determination in light of the (k)(1) sources that were considered by Commerce in addition to the plain scope language.  Appx13-21.  With respect to the ITC Injury Report, the CIT found that Commerce's consideration of the ITC Injury Report as a (k)(1) source was reasonable in accordance with law as the ITC Injury Report aided Commerce in interpreting whether the plastic shelf

dividers were excluded when the magnets were rendered functionally inflexible after affixation to Siffron's product. Appx15-16. The CIT also found that Commerce's reliance on prior scope rulings was reasonable as a permissible (k)(1) source that assisted Commerce with its scope analysis. Appx12. The CIT concluded that Commerce's scope interpretation that the addition of another material to a raw flexible magnet can render the product "substantially different" from a raw flexible magnet and thus outside the scope of the *Orders* was reasonable. Appx19-20, 21. Furthermore, the CIT concluded that "the scope language, when read together with the (k)(1) sources, unambiguously established that the *Orders* exclude products that have been altered and resulted in a product with a 'functionally inflexible' magnet, and products to which a flexible magnet was attached and rendered into a 'substantially different' product from a raw flexible magnet." Appx21.

Moreover, the CIT reviewed Commerce's Final Scope Determination noting that Commerce supported its determination that Siffron's product is not subject to the *Orders* with citations to record evidence and product descriptions provided by Siffron. Appx.24. Therefore, the CIT found that Commerce's Final Scope Ruling is supported by substantial evidence. Appx22-24.

## III.  <u>Administrative Determination Under Review</u>

The administrative determination at issue for purposes of Plaintiff-Appellant's appeal is Commerce's final scope determination concerning the

antidumping and countervailing *Orders* on raw flexible magnets from the People's Republic of China, conducted pursuant to 19 C.F.R. § 351.225.  App569-581.

Plaintiff-Appellant challenges the CIT's decision sustaining Commerce's Final Scope Ruling that Siffron's plastic shelf dividers are excluded from the scope of the *Orders*.  Specifically, Plaintiff-Appellant contends that Commerce's determination contradicts the plain language of the *Orders* and the decision is therefore contrary to law.  Plaintiff- Appellant contends that this Court should reverse the CIT's judgment and vacate as unlawful Commerce's scope ruling that Siffron's magnetic shelf dividers are outside the scope of the *Orders.*

## SUMMARY OF ARGUMENT

The CIT affirmed Commerce's Final Scope Ruling holding that Siffron's plastic shelf dividers are not subject to the scope of the *Orders*.  Commerce's Final Scope Ruling was reasonable and supported by substantial evidence.  Commerce's regulations grant it the discretion to use primary sources to interpret the scope of the *Orders.*  Specifically, 19 C.F.R. 351.225(k)(1) allows Commerce to review interpretive sources, such as the ITC Injury Report and Commerce's previous scope rulings in analyzing the language of the *Orders*' scope.  Consistent with its regulations, Commerce lawfully relied on the (k)(1) sources to determine that Siffron's imported plastic shelf dividers are not covered by the *Orders*.  Plaintiff-Appellant's arguments that Commerce cannot look to the (k)(1) sources is legally flawed and inconsistent

with Commerce's regulations.  As a result, the Court should find that Commerce properly relied on (k)(1) sources in analyzing the language of the *Orders*.

Plaintiff-Appellant's challenge to Commerce's review and analysis of these (k)(1) sources also fails.  The ITC Injury Report and Commerce's previous scope rulings supports Commerce's determination that Siffron's plastic shelf dividers are outside the scope of the *Orders* because the raw flexible magnets are "functionally inflexible" when affixed to Siffron's product.  Commerce's use and interpretation of these (k)(1) sources is consistent and reasonable with Commerce's previous scope determinations.  Commerce has properly applied these (k)(1) sources.

In sum, the CIT correctly affirmed Commerce's Final Scope Ruling which determined that Siffron's plastic shelf dividers are excluded from the scope of the *Orders*.

## **ARGUMENT**

### I.  **Standard of Review**

On appeal, the Court applies the same standard of review as the CIT, upholding Commerce's determinations that are supported "by substantial evidence on the record" and otherwise "in accordance with law."    19 U.S.C. § 1516a(b)(1)(B)(i); *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1341 (Fed. Cir. 2016).  While this Court reviews Commerce's determinations "*de novo*," *Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339, 1348 (Fed.

Cir. 2015), the Court "give{s} great weight to the informed opinion of the {CIT} . . . and it is nearly always the starting point of {the Court's} analysis." *Nan Ya Plastics*, 810 F.3d at 1341, quoting *Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247, 1253 (Fed. Cir. 2009).

Commerce's determination must be based upon "substantial evidence," consistent with 19 U.S.C. § 1516a(b)(1)(B)(i), including "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (*quoting Consol. Edison Co. of New York. v. NLRB*, 305 U.S. 197, 229 (1938)). Commerce's determinations must not be arbitrary and must be in accordance with law. *Id.* Substantial evidence review requires consideration of "the record as a whole, including any evidence that fairly detracts from the substantiality of the evidence," *Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010) (internal quotation marks and citation omitted), and asks, in light of that evidence, whether Commerce's determination was reasonable. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006).

To support its findings, Commerce must also explain the standards that it applied and demonstrate a rational connection between the facts on the record and the conclusions drawn. *See Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). Such explanations "must be reasonably discernible to a

reviewing court." *NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1319 (Fed. Cir. 2009). Commerce must provide a reasoned explanation for its determination. *See Changzhou Wujin Fine Chem. Factory Co. v. United States*,701 F.3d 1367, 1377 (Fed. Cir. 2012) (discussing *Motor Vehicle Mfrs. Ass'n of United States v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 48-49 (1983)); *accord CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1380-81 (Fed. Cir. 2016). Commerce's reasoned explanation must (1) "make the necessary findings and have an adequate evidentiary basis for its findings" to demonstrate substantial evidence, and (2) "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made" that Commerce has issued a decision in accordance with law. *In re NuVasive, Inc.*, 842 F.3d 1376, 1382 (Fed. Cir. 2016) (internal quotation marks and citations omitted); *see also Changzhou Wujin Fine Chem. Factory*, 701 F.3d at 1377 (explaining that "substantial evidence" must support Commerce's factual findings and that Commerce's "reasoning" must be non-arbitrary to be lawful).

As the Federal Circuit noted, "{e}ven if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." *Am. Silicon Techs. v. United States,* 261 F.3d 1371, 1376 (Fed. Cir. 2001) (*citing Fujitsu Gen. Ltd. v. United States,* 88 F.3d 1034, 1044 (Fed. Cir. 1996)). "{T}he Court may

not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) (citations and internal quotations omitted).

The Court grants "'significant deference to Commerce's interpretation of a scope order.'" *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300 (Fed. Cir. 2013) (*quoting Global Commodity Group LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013)). This is because scope rulings involve "a highly fact intensive and case-specific determination," *King Supply Co., LLC v. United States*, 674 F.3d 1343, 1345 (Fed. Cir. 2012), making it "particularly within the expertise of {Commerce}." *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998).

## II.    **The Court of International Trade Correctly Affirmed Commerce's Final Scope Ruling**

### A. **The CIT Properly Determined that Commerce Has Discretion to Consider (k)(1) Sources**

Commerce determined in its Final Scope Ruling that Siffron's plastic shelf dividers are not subject merchandise. Appx569. Commerce based its determination upon the plain language of the *Orders* and the description of the product contained in Siffron's Scope Request, taking into account the sources pursuant to 19 C.F.R. §

351.225(k)(1).  Appx578.  The CIT found that the scope language, when read together with the (k)(1) sources, unambiguously establishes that the *Orders* do not include Siffron's plastic shelf dividers.  Appx21.  The CIT, therefore, sustained Commerce's determination that Siffron's plastic shelf dividers are excluded from the scope of the *Orders* in accordance with law and supported by substantial evidence.  Appx27.

Plaintiff-Appellant challenges the CIT's final determination wrongly contending that the unambiguous scope language covers Siffron's plastic shelf dividers as the products meet the physical description of subject merchandise and the products do not meet the specific exclusions listed in the *Orders.*  App. Br. at 9-10.  Plaintiff-Appellant further wrongly avers that Commerce "cannot rely on prior scope rulings and a sentence from the ITC report" to create and apply an exclusion. App Br. at 6, 10-12.  Plaintiff-Appellant predicates their arguments upon an incorrect interpretation of the law and legal precedent.  Commerce's discretion to consider (k)(1) materials in analyzing a scope order exists whether the plain language may appear ambiguous or not.

The CIT properly determined that Commerce's inquiry of the plain language, as interpreted by the (k)(1) sources, was proper.  The Court has acknowledged that Commerce's review of the scope language is inseparable from consideration of the (k)(1) sources.  *See, e.g., Meridian Prods. v. United States*, 890 F.3d 1272, 1277

(Fed. Cir. 2018) ("*Meridian 2018*") (stating that "the plain language of an antidumping order is 'paramount,' " but that "{i}n reviewing the plain language of a duty order, Commerce must consider {the (k)(1) sources}") (citation omitted); *Shenyang Yuanda Aluminum Industry Engineering Co. v. United States*, 776 F.3d 1351, 1354 (Fed. Cir. 2015) (describing "a two-step process" in which "Commerce must {first} consider the scope language contained in the order itself, the descriptions contained in the petition, and how the scope was defined in the investigation and in the determinations issued by Commerce and the ITC").

As the CIT recently acknowledged, "Commerce's scope analysis (and the court's corresponding review of that analysis) is 'highly fact-intensive and case-specific.'" *See Vietnam Finewood Company Limited v. United States*, 2023 WL 3019662, Slip Op. 23-58, 7 (Ct. Int'l Trade, Apr. 20, 2023) (*citing King Supply*, 674 F.3d at 1345). The CIT went on to explain:

> Thus, in some cases, an order's scope, by itself, may be sufficiently plain in relationship to a particular product that no resort to the (k)(1) sources is necessary. In other cases, however, it may be necessary to consider the (k)(1) sources to confirm that the scope language plainly speaks to the inclusion or exclusion of a particular product. *See, e.g.*, *Meridian 2017*, 851 F.3d at 1383–84 (reviewing the scope language and finding that Commerce's interpretation of such language was supported by earlier scope rulings) (citation omitted); *ArcelorMittal*, 694 F.3d at 89–90 (finding a scope unambiguous "when read in light of industry practice" and "Commerce's previous {scope} decision").

15

*Id*. at 7.

The introductory text of 19 C.F.R. § 351.225(k)(1) currently reads:

> In determining whether a product is covered by the scope
> of the order at issue, the Secretary will consider the
> language of the scope and *may* make its determination on
> this basis alone if the language of the scope, including the
> descriptions of merchandise expressly excluded from the
> scope, is dispositive.

19 C.F.R. § 351.225(k)(1) (emphasis added). The subparagraph directly following this introductory text states that the "primary interpretative sources *may* be taken into account under paragraph (k)(1) introductory text of this section, *at the discretion of the Secretary . . .*" 19 C.F.R. § 351.225(k)(1)(i) (emphasis added). The primary interpretative sources are as follows: the descriptions of the merchandise contained in the petition; the descriptions of the merchandise contained in the initial investigation; previous or concurrent determinations of the Secretary, including prior scope rulings; and determinations of the ITC, including reports issued pursuant to the ITC's initial investigation. 19 C.F.R. § 351.225(k)(1)(i)(a)-(d).

Commerce's revised regulations included above reflect the inquiry established in *Meridian Products*. *See* Appx12 (*citing SMA Surfaces, Inc. v. United States*, 47 CIT_, _, 617 F. Supp. 3d 1263, 1273 (2023); *id.* at 1272 n.2 ("In September 2021, Commerce promulgated a final rule that amended the text of 19 C.F.R. § 351.225(k)(1) to reflect the three-step inquiry {established in *Meridian Products*} that had been fashioned by the Federal Circuit's combining of case law

and the prior code provision.")).  In modifying these regulations, Commerce confirmed that the (k)(1) sources were always intended to be included in conducting a scope analysis.  Commerce stated in the Final Rule modifying the regulations the following regarding the intent to utilize (k)(1) sources in issuing scope determinations:

> {W}e also agree with the commenters who argue that in most scope inquiries the language of the scope is written in more general or broad terms, and, therefore, in the majority of scope inquiries, it is likely that the current (k)(1) sources would be considered by Commerce in determining if a product is covered by the scope of an order in a scope ruling.  *It is Commerce's understanding that the sources listed in current § 351.225(k)(1) were always intended to be interpretive tools to understand the plain meaning of the scope*, recognizing that terms that may have been plain at the time they were drafted and adopted upon the issuance of the order could be interpreted differently at some later point.

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,323 (Sept. 20, 2021) ("Final Rule") (emphasis added).

In light of the above, Plaintiff-Appellant's contention that "{t}here was no basis to resort to (k)(1) interpretive sources" is misplaced and an improper view of the scope ruling regulations.  App Br. at 12.  Commerce's consideration of the (k)(1) sources in determining whether the plain language of the *Orders* covered Siffron's product was proper.  As the CIT concluded, "Commerce had the discretion to

17

consider the (k)(1) sources when determining whether the scope language plainly spoke to the inclusion or exclusion of Siffron's product, without first characterizing the existence of ambiguity as a condition precedent." Appx12.  The statute expressly allows for this discretion to consider the (k)(1) sources when determining whether the scope language includes or excludes Siffron's product as a result of the use of the word "may" in 19 C.F.R. §§ 351.225(k)(1), (k)(1)(i).  As the statute reads, "the Secretary will consider the language of the scope and *may* make its determination on this basis alone if the language of the scope."  In other words, Commerce's consideration of (k)(1) materials to determine the *Orders*' scope was consistent with its regulations as a proper interpretive tool to understand the plain meaning of the scope of the *Orders*.

## B. The Final Scope Ruling Properly Interpreted the Scope Language in Consideration of the (k)(1) Factors

Plaintiff-Appellant's arguments that Commerce misused the (k)(1) sources to change the scope of the *Orders* lacks merit.  App Br. at 12-13.  Similarly, Plaintiff-Appellant's arguments that Commerce's analysis and application of the (k)(1) sources is legally flawed, unsupported by the administrative record, and should be rejected by the Court.  App. Br. at 14-18.  The interpretive (k)(1) sources (*i.e.*, ITC Injury Report and Commerce's previous scope rulings) confirm that the scope language plainly speaks to the inclusion or exclusion of Siffron's plastic shelf dividers.  19 C.F.R. § 351.225(k)(1).  Commerce's application and analysis of these

(k)(1) sources was reasonable.  The ITC Injury Report and Commerce's previous scope rulings support the determination that Siffron's plastic shelf dividers are not subject to the *Orders*.

### i.    The ITC Injury Report Supports Commerce's Determination that Siffron's Plastic Shelf Dividers are Not Covered By the *Orders*

Plaintiff-Appellant never disputed Commerce's conclusion that Siffron's plastic shelf dividers contain raw flexible magnets that are functionally inflexible or that Siffron's plastic shelf divider would be ineffective for its intended use if the plastic blade (with the affixed magnet) were twisted, bent, or manipulated.  Appx15-16.  As the Final Scope Ruling provided, "Siffron has demonstrated that bonding raw flexible magnets with an adhesive to a plastic blade renders the plastic shelf dividers inflexible to the extent that the plastic shelf divider cannot be manipulated without damaging the product."  Appx579.  Rather, Plaintiff-Appellant argues that Commerce's interpretation of the ITC Injury Report was improper.  App. Br. at 14-15.

The ITC Injury Report provides that "{f}lexible magnets are permanent magnets that *can be twisted, bent, slit, punched, coiled, and otherwise molded into any shape* without loss of magnetic properties."  Appx579 (emphasis added).  Additionally, per the ITC Injury Report, "{m}agnetic sheet is characterized as '(s)heets of material that are *highly flexible* and have permanent magnetic properties.'"  Appx437.  Appellant's reading of the ITC Injury Report is limited as

19

it focuses only on the "loss of magnetic properties" detailed in the ITC Injury Report, while ignoring the "flexibility" requirement of subject merchandise. As the ITC Injury Report details, subject merchandise is both flexible and magnetic. This report establishes that if a flexible magnet can be twisted, bent, *etc*., without losing its magnetic properties then it may be deemed subject merchandise. But, if a flexible magnet loses its magnetic properties when twisted, bent, *etc*., then it is no longer a flexible magnet under the *Orders* as it has lost its magnetic properties. Based upon this same rationale, magnets that cannot be twisted, bent, *etc*. are no longer flexible, meaning these magnets have lost the flexible properties required to be subject to the *Orders*. These two characteristics (*i.e.*, both magnetic and flexible properties) are required for subject merchandise.

The administrative record demonstrates that Siffron's plastic shelf dividers, at the time of import, are rigid and not capable of twisting or bending. *See e.g.*, Appx361; Appx565; Appx566; Appx567; Appx568. In other words, the administrative record demonstrates that the magnets in Siffron's plastic shelf dividers are incapable of twisting, bending, or molding into any shape. While Plaintiff-Appellant focuses solely on the ITC's statement regarding the "loss of magnetic properties," it ignores the fact that the flexible magnet, per the ITC Injury Report, must be both magnetic and flexible. The administrative record demonstrates Siffron's plastic shelf divider renders the magnet functionally inflexible.

Commerce's analysis is both accurate and reasonable. Plaintiff-Appellant points to no other evidence to support the fact that the magnet bonded to Siffron's plastic shelf divider is flexible once it is attached to the shelf divider.

In sum, Commerce's consideration of the ITC Injury Report is permissible pursuant to 19 C.F.R. § 351.225(k)(1). Additionally, Commerce's analysis of the ITC Injury Report was reasonable and the ITC Injury Report supports Commerce's determination that Siffron's plastic shelf dividers are not covered by the scope of the *Orders*.

## ii.    Commerce's Final Scope Ruling is Consistent with Its Previous Scope Rulings

Plaintiff further asserts that "Commerce cannot rely on prior scope rulings . . . to create and apply a 'functionally inflexible' exclusion" and that such determination contradicts the plain language of the *Orders* and is unlawful. App. Br. at 15-18. However, Commerce did not add a new flexibility requirement because subject merchandise must be flexible. The scope of the *Orders* establishes this requirement in the first sentence ("The products covered by this order are certain *flexible* magnets regardless of shape, color or packaging."). Appx34; Appx35 (emphasis added). Additionally, Commerce's previous scope rulings support its determination that Siffron's plastic shelf dividers are not within the scope of the *Orders*. These previous scope rulings specifically addressed the flexibility requirements of subject merchandise set forth in the scope of the *Orders*. Appx578-

579.   These scope rulings are primary interpretive (k)(1) sources and dictate Commerce's reasonable interpretation of the *Orders* over more than a decade.

Plaintiff-Appellant first argues that Commerce's reliance on the *InterDesign Scope* Ruling was flawed as it "created a flexibility requirement for the first time." App. Br. at 16.   The CIT properly dismissed such an argument, concluding that Commerce did not add a new flexibility requirement.   The CIT pointed directly to the first sentence of the scope of the *Orders* which specifically states that subject merchandise must be "flexible."   Appx19.

Commerce's determination in its *InterDesign Scope Ruling* found that a paper towel chrome skirt mount with a bonded magnet fell outside the scope of the *Orders.* Appx88-99.   This previous scope ruling provides important guidance on whether a downstream product that includes a raw flexible magnet is subject merchandise.   *Id*. Commerce concluded that the housing to which the magnet is bonded was not functionally flexible because it could not be manipulated without damaging the product.   In making its scope determination, Commerce explained:

> The scope's provision that raw flexible magnets can be bonded with "paper, plastic, or other material, of any composition" does not extend to the point that the material renders the flexible magnet to be no longer flexible.   As the first sentence of the scope of the orders indicates that it pertains to flexible magnets, this suggests that magnets that have been rendered inflexible by attached materials should be outside the scope of the orders . . .The scope language itself is dispositive. . ..

Appx98.

Contrary to Plaintiff-Appellant's assertions, Commerce's reliance on the *InterDesign Scope Ruling* was reasonable as a (k)(1) source and it provided guidance to Commerce's interpretation of the scope language. Likewise, Commerce's interpretation is reasonable that a product rendered "functionality inflexible" is no longer flexible and is therefore not subject to the *Orders*.

Plaintiff-Appellant next argues that Commerce's "substantial difference" test of a bonded flexible magnet contradicts the plain language of the *Orders* and that Commerce's reliance on the *MAI Scope Ruling* is misplaced. App. Br. at 19. However, as noted above, Commerce reasonably concluded that the *Orders* have a flexibility requirement and permissibility utilized (k)(1) primary sources to interpret such requirements. Additionally, Commerce reasonably determined, consistent with the *MAI Scope Ruling*, that the addition of another material to a raw flexible magnet can render the product "substantially different" from a raw flexible magnet and thus outside the scope of the *Orders*. Appx580.

In the *MAI Scope Ruling*, Commerce found that the addition of other materials to a raw flexible magnet created a product that is different from a raw flexible magnet. Appx121-131. Commerce considered a surgical instrument drape, which is a flexible quilt stuffed with flexible magnets designed to hold ferrous surgical instruments magnetically. Commerce concluded:

23

> By combining a raw flexible magnet with a sheet of foam and a sheet of plastic film, MAI has created a product that is substantially different from a raw flexible magnet. In the construction of the Surgical Instrument Drape, MAI has augmented the product to expand the capabilities of the incorporated raw flexible magnet. This advances, rather than merely modifies, the function of the raw flexible magnets. The functions of the drape are specifically designed to meet the needs of the surgical environment . . . These characteristics render the drape a different product from a raw flexible magnet subject to the orders.

Appx131.

Plaintiff-Appellant's arguments that reliance on the *MAI Scope Ruling* is not relevant because the surgical instrument drape is not "bonded" to the magnet is also misplaced. App. Br. at 19. The *MAI Scope Ruling* is relevant due to Commerce's factual determination that the addition of another material to a raw flexible magnet (whether or not bonded) can render the product distinguishable from the *Orders*. For the reasons detailed above, Commerce's use of the *MAI Scope Ruling* is a reasonable interpretive source pursuant to 19 C.F.R. § 351.225(k)(1).

Commerce's Final Scope Ruling provides an analysis to the merchandise at issue: plastic shelf dividers. Commerce's determination is consistent with its previous determinations, which require subject raw flexible magnets to continue to be functionally flexible when affixed to another component. Appx579-581. Such an interpretation does not conflict with the *Orders* nor does Commerce's analysis

change the scope of the *Orders*. Commerce's reasonable determination should be given significant deference.

Commerce made a factual determination that Siffron's plastic shelf dividers are not "flexible." The administrative record demonstrates that these products are plastic rigid blades that are not "flexible" because the plastic shelf dividers cannot be physically manipulated without damaging the product. Appx579. The Court grants "'significant deference to Commerce's interpretation of a scope order.'" *See e.g., Mid Continent*, 725 F.3d at 1300 (*quoting Global Commodity Group*, 709 F.3d at 1138) ("The Court grants "'significant deference to Commerce's interpretation of a scope order.'"); *Allegheny Bradford Corp. v. United States*, 342 F. Supp. 2d 1172, 1183 (Ct. Int'l Trade 2004). This Court should rule that Commerce's factual determination and scope interpretation is supported by substantial evidence on the record and otherwise in accordance with law.

## <u>CONCLUSION</u>

For the reasons set forth in above, Siffron respectfully requests that this Court sustain Commerce's Final Scope Ruling.

Respectfully Submitted,

By:    <u>/s/ Kristen Smith</u>
       Kristen Smith

**SANDLER TRAVIS & ROSENBERG, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (202) 730-4965
Fax: (202) 842-2247

*Counsel to Fasteners for Retail, Inc.,*
*dba Siffron*

Dated: February 28, 2024

**FORM 30. Certificate of Service**

Form 30
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

| **Case Number** | 24-1164 |
|---|---|
| **Short Case Caption** | Magnum Magnetics v. United States |

> **NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on  02/28/2024

by   ☐   U.S. Mail   ☐   Hand Delivery   ☑ Email   ☐ Facsimile
☐   Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Jeremy W. Dutra<br>Christopher D. Clark | Squire Patton Boggs (US) LLP, 2550 M Street, NW, Washington, DC 20037<br>jeremy.dutra@squirepb.com;<br>christopher.clark@squirepb.com |
| Christopher Berridge | United States Department of Justice, Civil Division, PO Box 480<br>Ben Franklin Station, Washington, DC 20044<br>christopher.berridge@usdoj.gov |
| Kenneth G. Kays | United States Department of Commerce, Office of Chief Counsel for Trade Enforcement and Compliance<br>1401 Constitution Avenue, NW, Washington, DC 20230, kenneth.kays@trade.gov |
| | |
| | |

☐   Additional pages attached.

Date: 02/28/2024

Signature:   /s/ Kristen Smith

Name:   Kristen Smith

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 5,492 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times Roman 14-point font.

Dated: February 28, 2024

Respectfully submitted,

By:     <u>/s/ Kristen Smith</u>
Kristen Smith

**SANDLER TRAVIS & ROSENBERG, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (202) 730-4965
Fax: (202) 842-2247