24-1164

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

---

MAGNUM MAGNETICS CORPORATION.,
Plaintiff-Appellant,

v.

UNITED STATES,
Defendant-Appellee,

and

FASTERNERS FOR RETAIL, INC. d/b/a SIFFRON,
Defendant-Appellee.

---

On Appeal From The United States Court Of International Trade
Court No. 22-00254, Honorable Jennifer Choe-Groves, Judge

---

### BRIEF FOR DEFENDANT-APPELLEE, UNITED STATES

---

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

OF COUNSEL:
K. GARRETT KAYS
Attorney
Office of the Chief Counsel for
Trade Enforcement & Compliance
Department of Commerce
Washington, D.C. 20230

CHRISTOPHER BERRIDGE
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 353-0537
Christopher.Berridge@usdoj.gov

*Attorneys for Defendant-Appellee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF RELATED CASES ............................................... vi

STATEMENT OF THE ISSUES ...................................................... 1

STATEMENT OF THE CASE ........................................................... 1

I.     Nature Of The Case ........................................................... 1

II.    The Antidumping And Countervailing Duty Orders ...................... 2

III.   Merchandise Subject To Scope Inquiry ...................................... 3

IV.   The Scope Request And Commerce's Final Scope Ruling ............ 4

V.    The Trial Court Sustained Commerce's Scope Ruling ................. 6

SUMMARY OF THE ARGUMENT ................................................... 7

ARGUMENT ................................................................................... 9

I.     Standard Of Review ........................................................... 9

II.    Legal Framework For Scope Rulings ........................................ 9

III.   Commerce Appropriately Relied On The (k)(1) Factors In Determining That Siffron's Plastic Shelf Dividers Do Not Fall Within The Scope Of The *Orders* .................................................................. 12

IV.   Commerce's Determination That Siffron's Plastic Shelf Dividers Do Not Fall Within The Scope of the *Orders* Is Supported By Substantial Evidence ..................................................................... 16

        a.  The ITC Injury Report Supports Commerce's Analysis of the *Orders* ................................................................. 17

i

b.  Commerce's Ruling In This Case Is Consistent With Its Prior Scope Determinations..................................................................................19

CONCLUSION ..................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
    802 F.3d 1339 (Fed. Cir. 2015)............................................................... 9

*Allegheny Bradford Corp. v. United States*,
    342 F. Supp. 2d 1172 (Ct. Int'l Trade 2004) ......................................21

*ArcelorMittal Stainless Belgium N.V. v. United States*,
    694 F.3d 82 (Fed. Cir. 2012) ...............................................................12

*Consolo v. Fed. Mar. Comm'n*,
    383 U.S. 607, 620 (1966)......................................................................22

*Dupont Teijin Films USA, LP v. United States*,
    407 F.3d 1211 (Fed. Cir. 2005)............................................................. 9

*Fedmet Res. Corp. v. United States*,
    755 F.3d 912 (Fed. Cir. 2014) ....................................................10, 12

*Magnum Magnetics Corp. v. United States*,
    657 F. Supp. 3d 1387 (Ct. Int'l Trade 2023) ..................................... 2

*Meridian Prod., LLC v. United States*,
    851 F.3d 1375 (Fed. Cir. 2017)...........................................6, 10, 12

*Mid Continent Nail Corp. v. United States*,
    725 F.3d 1295 (Fed. Cir. 2013)............................................................12

*OMG, Inc. v. United States*,
    972 F.3d 1358 (Fed. Cir. 2020) ..........................................................10

*OMG, Inc. v. United States*,
    321 F. Supp. 3d 1262 (Ct. Int'l Trade 2018) ....................................20

*Sango Int'l L.P. v. United States*,
    484 F.3d 1371 (Fed. Cir. 2007)..........................................................11

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
   776 F.3d 1351 (Fed. Cir. 2015)................................................................10

*SMA Surfaces, Inc. v. United States*,
   617 F. Supp. 3d 1263 (Ct. Int'l Trade 2023) ....................................15

*Suramerica de Aleaciones Laminadas, C.A. v. United States*,
   44 F.3d 978, 983 (Fed. Cir. 1994)........................................................ 9

*Tak Fat Trading Co. v. United States*,
   396 F.3d 1378 (Fed. Cir. 2005)............................................................11

*Tianjin Wanhua Co. v. United States*,
   179 F. Supp. 3d 1062 (Ct. Int'l Trade 2016) ....................................24

*Union Steel v. United States*,
   713 F.3d 1101 (Fed. Cir. 2013)............................................................ 9

*United States v. Eurodif*,
   555 U.S. 305 (2009) ............................................................................ 9

*United Steel & Fasteners, Inc. v. United States*,
   947 F.3d 794 (Fed. Cir. 2020)..............................................................12

*Uttam Galva Steels Ltd. v. United States*,
   476 F. Supp. 3d 1387 (Ct. Int'l Trade 2020) ....................................24

*Whirlpool Corp. v. United States*,
   890 F.3d 1302 (Fed. Cir. 2018)............................................................12

## **Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ................................................................ 9

19 U.S.C. § 1673e(a)(2) ........................................................................ 9

19 U.S.C. § 1677(25) ............................................................................10

## **Regulations**

19 C.F.R. § 351.225(a) ........................................................10

19 C.F.R. § 351.225(c) ........................................................ 4

19 C.F.R. § 351.225(e).........................................................11

19 C.F.R. § 351.225(k)(1).................................................*passim*

19 C.F.R. § 351.225(k)(2).................................................6, 12

19 C.F.R. § 351.225(k)(3)................................................5, 6, 7, 12

## **Other Authorities**

*Raw Flexible Magnets from the People's Republic of China*,
   73 Fed. Reg. 53,847 (Dep't of Commerce Sept. 17, 2008).........................*passim*

 *Raw Flexible Magnets from the People's Republic of China*,
   73 Fed. Reg. 53,849 (Dep't of Commerce Sept. 17, 2008).........................*passim*

*Regulations To Improve Administration and Enforcement of Antidumping and
Countervailing Duty Laws*,
   86 Fed. Reg. 52,300, 52,323 (Sept. 20, 2021) ........................................10, 14, 15

## **STATEMENT OF RELATED CASES**

Pursuant to Rule 47.5 of the Rules of this Court, we state that we are unaware of any other appeal from this civil action that previously has been before this Court or any other appellate court under the same or similar title. We are also unaware of any case pending in this or any other court or agency that may directly affect or be affected by the decision in this appeal.

## STATEMENT OF THE ISSUES

1.     Whether the Department of Commerce (Commerce) correctly applied the regulation when it considered the plain language of the antidumping and countervailing duty orders' scope language, as well as other sources that it is permitted to consider under the regulations.

2.     Whether Commerce's ultimate determination finding that flexible magnets which are rendered functionally inflexible by bonding to other materials are no longer flexible magnets within the scope of the order is otherwise supported by substantial evidence.

## STATEMENT OF THE CASE

### I.     Nature Of The Case

This appeal concerns the results of Commerce's final scope ruling that plastic shelf dividers imported by Fasteners for Retail, Inc., doing business as Siffron (Siffron) are not covered by the scope of the antidumping duty (AD) and countervailing duty (CVD) orders on raw flexible magnets from the People's Republic of China (China).  *See Raw Flexible Magnets from the People's Republic of China*, 73 Fed. Reg. 53,847 (Dep't of Commerce Sept. 17, 2008) (AD Order), and *Raw Flexible Magnets from the People's Republic of China*, 73 Fed. Reg. 53,849 (Dep't of Commerce Sept. 17, 2008) (CVD Order) (collectively, the *Orders*).  Plaintiff-appellant Magnum Magnetics Corporation (Magnum) appeals

1

from the final judgment of the United States Court of International Trade in

*Magnum Magnetics Corp. v. United States*, 657 F. Supp. 3d 1387 (Ct. Int'l Trade

2023) (Appx1-Appx28), sustaining Commerce's final scope ruling as supported by

substantial evidence and in accordance with law.  Appx27.

## II.    The Antidumping And Countervailing Duty Orders

On September 17, 2008, Commerce published the *Orders* on raw flexible

magnets from China.  *See* Appx33; Appx35.  The scope of the *Orders* provides:

The products covered by this order are certain *flexible* magnets regardless of shape, color, or packaging. Subject flexible magnets are bonded magnets composed (not necessarily exclusively) of (i) any one or combination of various flexible binders (such as polymers or co-polymers, or rubber) and (ii) a magnetic element, which may consist of a ferrite permanent magnet material (commonly, strontium or barium ferrite, or a combination of the two), a metal alloy (such as NdFeB or Alnico), any combination of the foregoing with each other or any other material, or any other material capable of being permanently magnetized.

Subject flexible magnets may be in either magnetized or unmagnetized (including demagnetized) condition, and may or may not be fully or partially laminated or fully or partially bonded with paper, plastic, or other material, of any composition and/or color. Subject flexible magnets may be uncoated or may be coated with an adhesive or any other coating or combination of coatings.

Specifically excluded from the scope of this order are printed flexible magnets, defined as flexible magnets (including individual magnets) that are laminated or bonded with paper, plastic, or other material if such paper, plastic, or other material bears printed text and/or images, including but not limited to business cards, calendars, poetry, sports event schedules, business promotions, decorative motifs, and the like. This exclusion does not apply to such printed flexible magnets if the printing concerned consists of only the following: a trade mark or trade name; country of origin; border, stripes, or lines; any printing that

is removed in the course of cutting and/or printing magnets for retail sale or other disposition from the flexible magnet; manufacturing or use instructions (e.g., "print this side up," "this side up," "laminate here"); printing on adhesive backing (that is, material to be removed in order to expose adhesive for use such as application of laminate) or on any other covering that is removed from the flexible magnet prior or subsequent to final printing and before use; non-permanent printing (that is, printing in a medium that facilitates easy removal, permitting the flexible magnet to be reprinted); printing on the back (magnetic) side; or any combination of the above.

All products meeting the physical description of subject merchandise that are not specifically excluded are within the scope of [the *Orders*]. The products subject to [the *Orders*] are currently classifiable principally under subheadings 8505.19.10 and 8505.19.20 of the Harmonized Tariff Schedule of the United States ("HTSUS"). The HTSUS subheadings are provided only for convenience and customs purposes; the written description of the scope of [the *Orders*] is dispositive.

Appx33; Appx36 (emphasis added).

## III.    Merchandise Subject To Scope Inquiry

The product is a plastic shelf divider with a raw flexible magnet affixed to the base. Appx570. The plastic shelf divider is made of rigid polyvinyl chloride (PVC) and consists of a plastic blade, generally T- or L-shaped, and a raw flexible magnet that is attached to the base of the plastic blade with an adhesive tape. *See id*. The plastic shelf divider is designed to sit on retail shelving to aid in displaying merchandise produced by end users of the plastic shelf divider. *See id*. The raw flexible magnet allows the shelf divider to be repositioned on a shelf without leaving a sticky residue. *Id*.

## IV.     The Scope Request and Commerce's Final Scope Ruling

On March 11, 2022, pursuant to 19 C.F.R. § 351.225(c), Siffron filed a scope ruling application.  Appx37.  In its application, Siffron stated that the plastic shelf dividers are produced and exported from China, "designed for use in a retail setting to organize and display merchandise" and that the "flexible magnet, which is attached to the divider using adhesive, provides the means of attachment to an existing shelf."  Appx45.

Siffron cited prior scope rulings in which Commerce determined that other products were not covered by the scope of the *Orders* because adding a flexible magnet to another material rendered the product inflexible and created a product that was substantially different from a raw flexible magnet.  Appx50-Appx53. Siffron described the plastic shelf dividers as "manufactured using a rigid piece of plastic that renders the magnet inflexible," and explained that, "[i]f the plastic shelf divider is bent or folded, the product would be damaged."  Appx53.  According to Siffron, the raw flexible magnet in its plastic shelf dividers is likewise affixed to an inflexible component and, thus, is rendered functionally inflexible and should be considered outside the scope of the *Orders*.  Appx52.

Commerce initiated its scope inquiry on April 11, 2022, based on Siffron's application.  Appx326.  Magnum, the petitioner in the underlying investigation in this proceeding, submitted comments arguing that Commerce should find Siffron's

4

product in-scope. Appx328-Appx352. In its comments, Magnum raised two main arguments. First, it contended that Siffron's plastic shelf dividers are covered by the plain language of the *Orders* under 19 C.F.R. § 351.225(k)(1). Appx331-Appx337. And second, Magnum argued that Siffron's plastic shelf dividers would also be covered by the *Orders* under the factors considered in 19 C.F.R. § 351.225(k)(3). Appx337-Appx343. On August 9, 2022, Commerce published its Final Scope Ruling and concluded that Siffron's plastic shelf dividers are not within the scope of the *Orders*. Appx578- Appx581.

Commerce examined the *Orders* and the description of the products contained in Siffron's scope request (including pictures and video that Siffron provided) and relied on the primary interpretive sources set forth in 19 C.F.R. § 351.225(k)(1) for its analysis. *See id*. Upon examining the evidence, the plain language of the *Orders*, and (k)(1) interpretive sources—primarily, Commerce's previous scope rulings and language from the International Trade Commission (ITC) injury investigation— Commerce determined that the (k)(1) sources were dispositive in determining that the subject merchandise is excluded from the scope of the *Orders*. *Id.* Commerce first looked at the plain language and indicated that the merchandise "appear[ed] to fall within the scope of the *Orders*," but Commerce did not end its analysis at the plain language. Appx578. In consulting the (k)(1) sources, Commerce found that because bonding the raw flexible magnet to a rigid

5

component made the otherwise flexible magnets "functionally inflexible," the plastic shelf dividers were outside of the scope of the *Orders*. Appx578- Appx581. Because these (k)(1) sources were dispositive in determining that the plastic shelf dividers are not within the scope of the *Orders*, Commerce found it unnecessary to consider the additional factors specified in 19 C.F.R. § 351.225(k)(2) and § 351.225(k)(3). Appx578.

## V.    The Trial Court Sustained Commerce's Scope Ruling

Magnum challenged aspects of Commerce's decision before the Court of International Trade. In September 2023, the trial court sustained Commerce's Final Scope Ruling as supported by substantial evidence and in accordance with law. Appx27. The trial court acknowledged that Commerce revised 19 C.F.R. § 351.225(k)(1) and noted that that the Court of International Trade has "interpreted Commerce's revised regulation to reflect the [Court of Appeals for the Federal Circuit's] approach in *Meridian Products*." Appx12 (citing *Meridian Prod., LLC v. United States*, 851 F.3d 1375, 1381 (Fed. Cir. 2017)[1]). Accordingly, the trial court held that "Commerce had the discretion to consider the (k)(1) sources when determining whether the scope language plainly spoke to the inclusion or exclusion

---

[1] This approach includes Commerce first looking to the text of the scope of an order, then Commerce will consult merchandise descriptions in other sources, and "if still necessary," Commerce is permitted to consider additional factors that compare the merchandise at issue with merchandise that is subject to the order. *Meridian Prod.*, 851 F.3d at 1381.

of Siffron's product, without first characterizing the existence of ambiguity as a condition precedent." *Id.* The trial court found "that the scope language, when read together with the (k)(1) sources, unambiguously establishes that the *Orders* exclude products that have been altered and resulted in a product with a 'functionally inflexible' magnet, and products to which a flexible magnet was attached and rendered into a 'substantially different' product from a raw flexible magnet." Appx21. The trial court also found that, through Commerce's "citations to record evidence and product descriptions provided by Siffron," Commerce's Final Scope Ruling is supported by substantial evidence. Appx24. Lastly, while Magnum argued that Commerce unlawfully relied on a (k)(3) factor in its Final Scope Ruling, the trial court held that Commerce "merely responded to, and ultimately rejected, Plaintiff's proposal that Commerce should conduct a (k)(3) analysis." Appx26. For those reasons, the trial court sustained Commerce's Final Scope Ruling. Appx27. This appeal followed.

## SUMMARY OF THE ARGUMENT

Commerce's regulations provide it with the discretion to use the interpretive sources under 19 C.F.R. § 351.225(k)(1) in its initial scope analysis of the language of an order's scope. Consistent with the regulations, in its Final Scope Ruling, Commerce examined the scope language and lawfully relied on (k)(1) sources (including prior scope rulings and the ITC Injury Report), ultimately determining,

in light of those sources, that Siffron's imported plastic shelf dividers are not covered by the *Orders*. Although Magnum contends that Commerce cannot look to the (k)(1) sources unless it first finds an ambiguity in the order, the trial court correctly held that Magnum's position is contrary to the regulations in effect at the time of the scope ruling.

The trial court's judgment should also be affirmed because Commerce's analysis of the underlying (k)(1) materials is supported by substantial evidence. The ITC Injury Report supports Commerce's determination that Siffron's plastic shelf dividers are outside the scope of the *Orders* because the raw flexible magnets are "functionally inflexible" when affixed to the plastic blade of the shelf divider. Further, Commerce's prior scope rulings are consistent with Commerce's conclusion here that affixing the otherwise flexible magnets in Siffron's product to an inflexible plastic blade renders them outside the scope. Although Magnum criticizes Commerce for relying on these prior rulings, Magnum cites nothing indicating that these rulings have been invalidated or that Commerce cannot rely on them. Magnum's position rests fundamentally on a disagreement with Commerce's prior rulings for these orders, but Magnum does not show that Commerce misapplied those rulings in this case.

## ARGUMENT

### I.    Standard Of Review

When reviewing the Court of International Trade's judgment concerning a final determination of Commerce, this Court reapplies the trial court's standard of review. *Dupont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005). Accordingly, this Court upholds Commerce's determination unless it is unsupported by substantial record evidence, or otherwise unlawful. *Union Steel v. United States*, 713 F.3d 1101, 1106 (Fed. Cir. 2013) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)); *see also United States v. Eurodif*, 555 U.S. 305, 316 n.6 (2009) ("The specific factual findings on which [Commerce] relies . . . are conclusive unless unsupported by substantial evidence."). Although this amounts to repeating the trial court's work, this Court has declared that it "will not ignore the informed opinion of the [trial court]." *Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339, 1348 (Fed. Cir. 2015) (quoting *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 983 (Fed. Cir. 1994)).

### II.    Legal Framework For Scope Rulings

When Commerce publishes an AD or CVD order, it defines the scope and "includes a description of the subject merchandise, in such detail as [Commerce] deems necessary." 19 U.S.C. § 1673e(a)(2). Commerce is often called upon to determine whether a certain product is included within the scope of an AD or CVD

9

order because it must write scope language in general terms. *Meridian Prod.*, 851 F.3d at 1379 (quoting 19 C.F.R. § 351.225(a) (2012) and 19 U.S.C. § 1677(25)). When Commerce confronts such a question, it follows the analytical framework and procedures set forth in its regulations. 19 C.F.R. § 351.225; *see also Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351, 1354 (Fed. Cir. 2015) (stating that "[t]here is no specific statutory provision governing the interpretation of the scope of [AD] or [CVD] orders.").

Before Commerce modified the regulations in 2021, this Court had differing views on "whether the sources under the current [19 C.F.R.] § 351.225(k)(1) are used to interpret the 'plain meaning' of the text of the scope, or whether the plain meaning analysis comes first, and only once a determination on the plain meaning is determined, then the current [19 C.F.R.] § 351.225(k)(1) sources are considered." *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,323 (Sept. 20, 2021) (citing cases) (Final Rule); *cf. Fedmet Res. Corp. v. United States*, 755 F.3d 912, 918 (Fed. Cir. 2014) (explaining that the plain language is "paramount" and stating that, in "reviewing the plain language of a duty order," Commerce "must consider" the "descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior determinations) and the Commission"), with *OMG, Inc. v. United States*, 972 F.3d

1358, 1363–66 (Fed. Cir. 2020) (indicating that Commerce should look at the (k)(1) factors only after determining that the governing language in the scope order is ambiguous).

Under the relevant regulations modified in 2021, to determine if a product is covered by the scope of an order, Commerce "will consider the language of the scope and *may make its determination on this basis alone* if the language of the scope, including the descriptions of merchandise expressly excluded from the scope, is dispositive." 19 C.F.R. § 351.225(k)(1) (emphasis added). Commerce has discretion to consider the (k)(1) sources, which include the petition pertaining to the order at issue, previous determinations by Commerce (including prior scope determinations), and ITC reports pertaining to the order at issue. *See* 19 C.F.R. § 351.225(k)(1)(i). If Commerce determines that descriptions of the merchandise contained in the (k)(1) sources are dispositive, Commerce issues a final scope ruling indicating whether the product falls within the order's scope. *See* 19 C.F.R. § 351.225(e); *see also Tak Fat Trading Co. v. United State*s, 396 F.3d 1378, 1382 (Fed. Cir. 2005). The (k)(1) sources are "dispositive" when they "definitively answer the scope question." *Sango Int'l L.P. v. United States*, 484 F.3d 1371, 1379 (Fed. Cir. 2007). This Court reviews "Commerce's analysis of the (k)(1) sources against the product in question" for substantial evidence. *United Steel &*

11

*Fasteners, Inc. v. United States*, 947 F.3d 794, 799 (Fed. Cir. 2020); *see also*

*Meridian Prods.*, 851 F.3d at 1382 (citing *Fedmet Res. Corp.*, 755 F.3d at 919-22).

Only when the (k)(1) sources are not dispositive will Commerce consider the

five criteria set forth in § 351.225(k)(2).  *See* 19 C.F.R. § 351.225(k)(2); *Fedmet*

*Res. Corp.*, 755 F.3d at 918.  Moreover, "[i]f merchandise contains or consists of

two or more components and the product at issue in the scope inquiry is a

component of that merchandise as a whole," Commerce has discretion to consider

additional factors. *See* 19 C.F.R. § 351.225(k)(3).

### III. Commerce Appropriately Relied On The (k)(1) Factors In Determining That Siffron's Plastic Shelf Dividers Do Not Fall Within The Scope Of The Orders

Magnum argues that the plain language of the *Orders* alone governs, and

that Commerce therefore erred by relying on (k)(1) sources.  *See* Magnum Br. at 9-

12.  In particular, Magnum asserts that Commerce could not have consulted (k)(1)

sources upon finding that the unambiguous text of the *Orders* covered Siffron's

product.  *Id.* at 10-12 (citing *Mid Continent Nail Corp. v. United States*, 725 F.3d

1295, 1302 (Fed. Cir. 2013); *ArcelorMittal Stainless Belgium N.V. v. United States*,

694 F.3d 82, 87 (Fed. Cir. 2012); *Whirlpool Corp. v. United States*, 890 F.3d 1302,

1308 (Fed. Cir. 2018)).  Further, Magnum criticizes the trial court's holding for

providing "no analysis" of this issue by "merely citing the scope regulations."  *Id.*

Magnum is incorrect.  Commerce's regulations and related regulatory history

clearly support Commerce's consideration of (k)(1) sources in this case.

As an initial matter, the plain language of the *Orders*, read in conjunction

with the (k)(1) sources, demonstrates that the Siffron's product falls outside the

scope of the *Orders*.  *See* Appx21; Appx580.  On first review of the language of

the *Orders*, Commerce found that Siffron's product "appear[ed]" to fall within the

scope.  Appx578.  Commerce considered that:

> [T]he relevant language of the scope of the Orders includes flexible
> magnets "regardless of shape, color, or packaging."  Flexible magnets
> subject to the Orders may be fully or partially bonded to paper, plastic,
> or other materials or various flexible binders (e.g., polymers, co-
> polymers, rubber, etc.) of any composition or color.  Siffron's plastic
> shelf dividers are composed of an opaque and rigid plastic blade that
> is bonded with an adhesive to a raw flexible magnet at its base.

*Id.*  But, fundamentally, the *Orders* apply to *flexible* magnets.  *See* Appx33;

Appx36.  Altering a flexible magnet to make it functionally inflexible creates what

the trial court referred to as a "'substantially different' product from a raw flexible

magnet."  Appx 580; Appx21.  As the trial court noted, "the first sentence of the

scope of the *Orders* specifies that the subject merchandise *must be flexible*."

Appx19 (emphasis added).

Independent of the language of the *Orders*, the regulations applicable to this

scope ruling, regulations which were not in effect when Magnum's cited precedent

was issued, give Commerce the discretion to consider (k)(1) materials in analyzing

the scope of an order, *regardless* of whether the plain language may appear

ambiguous. *See* 19 C.F.R. § 351.225(k)(1)(i) (stating that "[t]he following primary

interpretive sources *may* be taken into account under paragraph (k)(1) introductory

text of this section, at the discretion of the Secretary.") (emphasis added). This

reading of 19 C.F.R. § 351.225(k)(1)(i) is likewise consistent with the

accompanying regulatory history, which states that Commerce did not intend for

the (k)(1) sources "to be separate from the initial analysis of the scope language,

but were instead intended to be interpretive tools that could be considered by

Commerce, at its discretion and under consideration of the arguments on the

administrative record" when interpreting an order. Final Rule at 52,300.

Ignoring the regulatory language and Commerce's clearly stated intent,

Magnum relies on cases from this Court that predate Commerce's updated

regulations. *See* Magnum Br. at 11. But in modifying the regulations, Commerce

specifically noted the "differing views" in the Federal Circuit as to when and if

(k)(1) sources could be considered; it was for this reason that Commerce "modified

[its regulations] to provide greater clarity on this point…." Final Rule at 53,323.

Thus, Commerce clarified that the (k)(1) sources were *always* intended to be

included in the initial analysis of the scope language:

> [W]e also agree with the commenters who argue that in most scope
> inquiries the language of the scope is written in more general or broad
> terms, and, therefore, in the majority of scope inquiries, it is likely that
> the current (k)(1) sources would be considered by Commerce in

> determining if a product is covered by the scope of an order in a scope
> ruling. It is Commerce's understanding that the sources listed in current
> § 351.225(k)(1) were always intended to be interpretive tools to
> understand the plain meaning of the scope, recognizing that terms that
> may have been plain at the time they were drafted and adopted upon the
> issuance of the order could be interpreted differently at some later point.

*Id.* Indeed, in its opinion and order, the trial court noted instances where

Commerce properly followed its post-2021 regulation changes to 19 C.F.R. §

351.225(k)(1)(i) when conducting a scope analysis, as Commerce did in the case

before this Court. Appx12 (citing *SMA Surfaces, Inc. v. United States,* 617 F.

Supp. 3d 1263, 1272 n.2 (Ct. Int'l Trade 2023)).

Thus, contrary to Magnum's assertion that there was "no basis" to resort to

(k)(1) interpretive sources, Magnum Br. at 12, Commerce acted in accordance with

its regulations by relying on the (k)(1) materials to determine the *Orders*' scope.

Despite Commerce's statement that "based on the plain language of the scope,

Siffron's product appears to fall within the scope of the *Orders*," Appx578,

Commerce had the discretion to also consider the (k)(1) materials to determine if

the *Orders* covered Siffron's product. Commerce's analysis was not required to

"end" at the language of the *Orders*. Magnum Br. at 12. Magnum is trying to

impose the very rigid order of operations that Commerce expressly rejected when

it amended the regulation.

Additionally, Magnum's contention that Commerce relied on "extra-textual

scope exclusions" is based on an incorrect interpretation of the regulations and is,

therefore, misplaced. *See* Magnum Br. at 12-13 (citing Appx33, "[a]ll products meeting the physical description of subject merchandise that are not specifically excluded are within the scope of the *Orders*."). Commerce lawfully looked to the (k)(1) sources (*i.e.*, prior scope rulings and the ITC report) to interpret the language of the *Orders*. Appx578-Appx580. In doing so, Commerce determined that the plastic shelf dividers do not fall within the *Orders'* scope because, *inter alia*, the "raw flexible magnets in Siffron's plastic shelf dividers, when affixed to the component plastic blade, are functionally inflexible." *See id.* In other words, Commerce permissibly relied on (k)(1) sources, not extra-textual exclusions, to determine the scope of the *Orders* and ultimately concluded, based on its interpretation, that Siffron's product do not match the physical description of the products subject to the *Orders*. *See id.*; *see also* Magnum Br. at 13. Magnum's mere disagreement with Commerce's interpretation does not render Commerce's reliance on the (k)(1) sources improper.

### IV. Commerce's Determination That Siffron's Plastic Shelf Dividers Do Not Fall Within The Scope of the Orders Is Supported By Substantial Evidence

Magnum attempts to further discredit Commerce's scope ruling by attacking the underlying (k)(1) materials and Commerce's associated analysis. Magnum Br. at 14. As explained below, Commerce's analysis of the (k)(1) materials is supported by substantial evidence.

16

### a. The ITC Injury Report Supports Commerce's Analysis of the *Orders*

Consistent with 19 C.F.R. § 351.225(k)(1), Commerce looked to the ITC Injury Report to determine if Siffron's product was covered by the *Orders*. Appx578-Appx580 (citing the ITC Injury Report). As Commerce explained in the Final Scope Ruling, the ITC Injury Report states that, "in general, flexible magnets are permanent magnets that can be twisted, bent, slit, punched, coiled, or otherwise molded into any shape without losing its magnetic properties." Appx579. In view of the ITC's description, Commerce concluded that, to fall within the scope of the *Orders*, an item incorporating an otherwise inflexible magnet "cannot be twisted, bent, or manipulated without that item breaking." *Id*. Applying that logic to Siffron's product, Commerce reasonably determined that the raw flexible magnets in Siffron's plastic shelf dividers are "functionally inflexible" when affixed to the plastic blade of the shelf divider, and therefore outside the scope of the *Orders*, because twisting or bending the shelf divider would damage the plastic blade and render the product "ineffective for its intended function as a product organizer." Appx580.

Magnum argues that Commerce's analysis is "logically incoherent" and inconsistent with the ITC Injury Report. Magnum Br. at 14-15. Specifically, Magnum's contention that Commerce's conclusion that an item cannot be considered flexible if it cannot be twisted or bent "without that item breaking" does

17

not follow from the ITC's statement that a flexible magnet can be twisted or bent "without losing its magnetic properties." *See id*. But Magnum's reading of the ITC's statement is too narrow and is, therefore, fundamentally flawed.

According to the ITC's reasoning, if a flexible magnet can be twisted or bent without losing its magnetic properties, then a flexible magnet that loses its magnetic properties when twisted or bent is no longer a flexible *magnet* under the *Orders*, that is, it has lost its *magnetic* function. Appx579. In the same way, and based on the ITC's rationale, Commerce determined that a magnet that loses its *flexing* function (*e.g.*, bending it would damage the plastic blade) is also not a *flexible* magnet. *Id.* There is nothing illogical or incoherent about Commerce's reasoning. In both scenarios, the characteristics of the otherwise flexible magnet are altered, one loses its magnetic properties, while the other, its functional flexibility. Either way, the result is the same: neither remains a flexible magnet under the *Orders*.

Magnum incorrectly asserts that "there is no evidence in the record that manipulating Siffron's magnetic shelf divider causes the bonded flexible magnet to lose its magnetic properties." *See* Magnum Br. at 15. But as Commerce explained in the scope proceedings, by bending, twisting, or manipulating the plastic shelf divider, the plastic blade component of the shelf divider is rendered damaged because the plastic blade: (1) loses the opacity that is a required feature of the

18

plastic shelf dividers; (2) does not return back to its desired shape to function as a retail shelf organizer; and (3) loses its function as a plastic shelf divider. Appx579; Appx361. Again, Magnum's narrow focus on the ITC's statement regarding the "loss of magnetic properties" overlooks that a flexible magnet must be both magnetic and flexible. Magnum identifies nothing to undermine Commerce's analysis on the functional inflexibility of the magnet once attached to the shelf divider.

### b. Commerce's Ruling In This Case Is Consistent With Its Prior Scope Determinations

In its scope request, Siffron cited three prior scope rulings – *InterDesign*, *Smith-Western*, and *Qwik Picz* – where Commerce determined that a finished good incorporating a magnet was outside the scope of the *Orders* because the magnets in the products in question were affixed to an inflexible component and were no longer functionally flexible. Appx578-Appx580; Appx51; Appx98; Appx107; Appx119-Appx120. Siffron also cited another scope ruling – *MAI* – in which Commerce found that "the addition of other material to the flexible magnets created a product that is substantially different from a raw flexible magnet," and, thus, was out of scope. Appx580; Appx50- Appx51; Appx130.

In its Final Scope Ruling, Commerce agreed with Siffron and concluded that its prior scope rulings, in particular *InterDesign* and *MAI*, provided further guidance for its determination that Siffron's product is not covered by the *Orders*.

Appx579-Appx580.  Notwithstanding that the consistency of Commerce's scope rulings helps "provide producers and importers with notice as to whether their products fall within the scope of an [AD] or [CVD] order," *OMG, Inc. v. United States*, 321 F. Supp. 3d 1262, 1264 (Ct. Int'l Trade 2018), Magnum contends that these prior rulings are not "persuasive" and that Commerce's reliance on them is misplaced.  *See* Magnum Br. at 10–16.  As explained below, however, Magnum's arguments are unconvincing.

Commerce's reliance on prior scope rulings was reasonable under 19 C.F.R. § 351.225(k)(1)(i)(C).  Pursuant to that provision, when considering whether a product is covered by the scope of an order, Commerce may take into account "[p]revious or concurrent determinations of the Secretary, including prior scope rulings, memoranda, or clarifications…."  *Id.*  In challenging Commerce's reliance on *InterDesign*, Magnum's argument can be distilled to a disagreement with the *InterDesign* ruling itself, and in particular Magnum's view that the ruling is "aberrational."  *See* Magnum Br. at 16.  Magnum contends that *InterDesign* allegedly changed the scope of the *Orders* by adding a so-called "flexibility requirement." *See id*. at 5, 15-17.  Commerce did not read a "flexibility requirement" into the scope of the *Orders*.  The first sentence of the scope makes that clear, as it requires that the subject merchandise be flexible.  Appx33; Appx36 ("The products covered by this order are certain flexible magnets…."), *see also*

Appx19 ("The Court does not agree with Plaintiff that Commerce added a new

flexibility requirement because the first sentence of the scope of the *Orders*

specifies that subject merchandise must be flexible.").  Although Magnum suggests

Commerce should review the magnets at issue in a vacuum, Magnum Br. at 16-18,

Commerce's primary objective is to analyze whether the merchandise is covered

by the scope of the *Orders*.  In doing so, Commerce has reasonably construed the

language of the *Orders* in a way that requires subject raw flexible magnets to

continue to be functionally flexible when affixed to another component (like

Siffron's plastic blade) to be covered by the *Orders*.  *See* Appx579-Appx580.  That

is neither a change to the scope of the *Orders* nor is it an interpretation that

conflicts with the *Orders*' language.  If anything, Commerce's consistent view of

the *Orders* (here and in prior rulings) refutes Magnum's argument that Commerce's

ruling is "arbitrarily constructed and arbitrarily applied."  Magnum Br. at 13.

Under these circumstances, this Court should hold that Commerce's interpretation

is reasonable.  *See Allegheny Bradford Corp. v. United States*, 342 F. Supp. 2d

1172, 1183 (Ct. Int'l Trade 2004) (explaining that this Court "gives significant

deference to Commerce's interpretation of its own orders").

Furthermore, Magnum is incorrect that *InterDesign* is distinguishable

because it involved a "rigid" product unlike the flexible product at issue here.

Magnum Br. at 17-18.  In Siffron's scope request, it stated numerous times that the

21

shelf dividers are made from "rigid PVC." Appx570; Appx47; Appx55; Appx77. Siffron provided video evidence supporting its claim that once bent, the shelf dividers do not return to their desired shape, and therefore lose their function as plastic shelf dividers. Appx579; Appx361; Appx565-Appx568. Commerce's focus on whether Siffron's shelf dividers returned to their desired shape was consistent with its analysis of a similar product in *InterDesign*, where Commerce found that the incorporated magnet could not "be manipulated without damaging the product." *See* Appx579- Appx580; Appx120. Magnum nonetheless argues that "extreme flexing" does not cause the shelf dividers to lose their "magnetic properties and that Commerce improperly focused on the "aesthetics" of the shelf. Magnum Br. at 17-18. But as stated above, Magnum misses the point, and overlooks that a flexible magnet must be both magnetic and flexible to be covered by the *Orders*. Appx580. Magnum simply disagrees with Commerce's consistent interpretation of the *InterDesign* ruling, which found that subject merchandise "cannot be manipulated without damaging the product" and still be covered by the scope. Disagreeing with Commerce's evidence-based interpretation is not a sufficient reason to disturb Commerce's scope ruling or the trial Court's judgment. *See, e.g.*, *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Magnum's arguments regarding the *MAI* scope ruling suffer from the same deficiency. Magnum disagrees with *MAI* but, like *InterDesign*, cites no authority

indicating that Commerce cannot or should not rely on this prior ruling. *See* Magnum Br. at 19. Although Magnum tries to distinguish *MAI* on the facts, arguing that in *MAI*, Commerce emphasized the "absence of bonding" between the magnet and the other component, Magnum ignores the critical aspect of *MAI* upon which Commerce relied. *See id.*; *cf.* Appx580. Specifically, while the lack of bonding was one reason the surgical drapes in *MAI* were deemed outside the scope of the *Orders*, Commerce separately determined that the surgical drapes were not covered because they also combined a raw flexible magnet with a sheet of foam and a sheet of plastic film, which "created a product that is substantially different from a raw flexible magnet." Appx50-Appx51; Appx130. That specific reasoning in *MAI* is the same that Commerce used in this case. *See* Appx580 ("In the instant scope inquiry, like *MAI's* surgical drape, the addition of another material, *i.e.*, a plastic blade, to a raw flexible magnet has created a product that is substantially different from a flexible magnet covered by the scope of the *Orders*."). So, while the lack of bonding may have been a factor in Commerce's analysis in *MAI*, it was irrelevant in the ruling at issue here.

Finally, Magnum argues that a finding "that bonding a 'plastic blade' to a flexible magnet creates a 'substantially different' product excluded from the scope of the *Orders* directly contradicts the explicit language of the *Orders*." Magnum Br. at 19. However, this is another example of Magnum's disagreement with

Commerce's reliance on (k)(1) sources that it was permitted to consider in this case.  In *MAI*, Commerce found that the attachment of a raw flexible magnet to a sheet of foam and a sheet of plastic film augmented the subject merchandise to "expand the capabilities of the incorporated raw flexible magnet," such that its "characteristics render the drape a different product from a raw flexible magnet subject to the orders." Appx580, Appx130.   Applying a similar logic, Commerce found that the addition of another material, *i.e.*, a plastic blade, to a raw flexible magnet has created a product that is substantially different from a flexible magnet covered by the scope of the *Orders.* Appx580.  As discussed above, Magnum still offers no convincing argument to undermine Commerce's analysis of the *MAI* ruling or its lawfully permissible discretion to rely on (k)(1) sources when interpreting scope language.

In short, contrary to Magnum's characterizations, Magnum merely disagrees with Commerce's weighing of the substantial record evidence and has not shown that Commerce's reliance on its (k)(1) sources is unlawful.  Ultimately, Magnum fails to show that its preferred outcome is the "'one and only one reasonable outcome' on [the] administrative record." *Uttam Galva Steels Ltd. v. United States*, 476 F. Supp. 3d 1387, 1393 (Ct. Int'l Trade 2020) (quoting *Tianjin Wanhua Co. v. United States*, 179 F. Supp. 3d 1062, 1071 (Ct. Int'l Trade 2016).

## <u>CONCLUSION</u>

For these reasons, we respectfully request that this Court affirm the

judgment of the trial court regarding Commerce's Final Scope Ruling.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. McCARTHY
Director

<u>/s/ Claudia Burke</u>
Claudia Burke
Deputy Director

OF COUNSEL:
K. GARRETT KAYS
Attorney
Office of the Chief Counsel for
Trade Enforcement & Compliance
Department of Commerce
Washington, D.C. 20230

<u>/s/ Christopher Berridge</u>
CHRISTOPHER BERRIDGE
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 353-0537
Christopher.Berridge@usdoj.gov

February 28, 2024

*Attorneys for Defendant-Appellee*